62 N.J. Super. 439 (1960)
163 A.2d 184
ROSS SYSTEMS, PLAINTIFF-RESPONDENT AND CROSS-APPELLANT,
v.
LINDEN DARI-DELITE, INC., ETC., AND JOHN SAMILA, DEFENDANTS-APPELLANTS AND CROSS-RESPONDENTS.
Superior Court of New Jersey, Appellate Division.
Argued February 29, 1960.
Reargued May 31, 1960.
Decided July 6, 1960.
*442 Before Judges CONFORD, FREUND and HANEMAN.
Mr. William F. Mullen argued the cause for defendants-appellants and cross-respondents (Mr. Daniel L. Golden, attorney).
Mr. David N. Ravin argued the cause for plaintiff-respondent and cross-appellant (Messrs. Ravin and Ravin, attorneys).
The opinion of the court was delivered by CONFORD, J.A.D.
Plaintiff is a partnership consisting of three brothers named Levin residing in Illinois. It is in the business of "franchising and selling" equipment to retail ice-cream stores to be operated under the trade name "Dari-Delite." In 1952 Charles R. Dann was appointed *443 plaintiff's exclusive agent in New Jersey. Plaintiff brings this action to enforce compliance by the defendant Linden Dari-Delite, Inc. ("Linden" hereinafter) with a franchise agreement dated April 12, 1954, under which Linden was authorized by plaintiff to sell Dari-Delite ice cream from a location at 446 Wood Avenue in the City of Linden. Dann was designated a "Third Party" in the agreement, with the right to supervise compliance with its terms by Linden and to "take over" the contract in the place of Linden upon default by the latter. By an amended complaint plaintiff also seeks reformation of the agreement so that it will be declared intended and effective for a term of ten years. Dann is not an individual party to this action. An understanding of the defense and counterclaim, and of the disposition of the matter by the trial court, from which both sides have appealed, requires detailing the somewhat complicated factual background of this controversy.
On March 8, 1954 Dari-Delite of New Jersey, Inc., a corporation apparently owned and controlled by Dann, entered into a lease as tenant for certain store premises at the Wood Avenue, Linden, location above referred to for a term of ten years. The property was subleased April 2, 1954 to Linden at the same rent as the principal lease and for the balance of the same term. At the times of all the transactions thus far mentioned the proprietary interest in Linden was vested in Dann and one Winfield R. Scott. However, no ice-cream business was actually conducted by Linden at the Wood Avenue location until the defendant Samila came into the picture, as about to be related.
On March 31, 1955 Samila purchased the stock of Linden from Dann and Scott for the sum of $10,500, intending to conduct the Dari-Delite ice-cream business under the franchise and lease aforementioned through the instrumentality of the Linden corporation. He did so until May 21, 1958, when Linden, through counsel, notified plaintiff by letter of its termination of the franchise agreement and advised it to remove its personal property from the premises. It appears *444 from the complaint and pretrial order that defendants' basic grievance against plaintiff was that Dann, who as plaintiff's agent had the function under the agreement of designating local suppliers of the ice-cream mix which Linden was required to use, had made a side-agreement with the supplier for a rebate or commission to Dann which caused the price to Linden to be inflated correspondingly and beyond the contemplation of the agreement. The only payments to or on behalf of plaintiff stipulated in the agreement were 25¢ per gallon of mix and 3¢ per gallon as dues to the National Dari-Delite Association. But by Dann's side-agreement with Farmland Dairies, made February 15, 1957, Farmland paid him $500 in cash and agreed to pay him a commission of $1 per can (ten gallons) and 25¢ per can "to be used to help increase the output of cans of mix in the Dari-Delite Stores of New Jersey." This extra $1.25 per can (or $1  the proofs are not clear) was added to the basic price and included in the gross price for which Farmland billed Linden. Linden claimed to have overpaid about $1,000 for ice-cream mix to Farmland because of the Dann commissions.
It was Linden's position in its answer that this conduct by Dann entitled it to terminate the agreement, and the counterclaim sought recovery of the excess payments thus exacted from it.
At the conclusion of the testimony of the defendant Samila at the trial, the trial judge, on his own motion, raised the question, not theretofore made a point of issue by defendants, as to whether plaintiff had not violated the franchise agreement in the material respect of failure to provide ice cream of an "exclusive" formula. He finally held that there was such a breach by plaintiff and that the plaintiff was therefore not entitled to enforce the agreement, thus eliminating the issue of reformation. He intimated the view that the evidence would have warranted reformation if the agreement were to be held enforceable. The court dismissed the matter of the excessive payments by defendant on the basis that they were made knowingly, and, therefore, voluntarily. *445 It went one step further, however, holding that since the franchise agreement was terminated the lease from Dari-Delite of New Jersey, Inc. to the corporate defendant must also be terminated, as the "franchise and the sublease are part and parcel of the same transaction and are inseparable." Plaintiff was given leave to join Dari-Delite of New Jersey, Inc. as a party to effectuate a judgment to the stated effect in respect to the lease.

I.
In the view we have taken as to certain of the issues in this matter it will be necessary to resolve the reformation issue. We do not propose to recite the pertinent proofs. We are satisfied that the evidence clearly indicates that the intent of the parties, both original and subsequent, was that the franchise agreement was to run for ten years and that the omission of the figure "ten" from one or two copies was an inadvertence. There is no doubt that in paying $10,500 for stock in the corporate defendant Samila was expecting to get the benefit of the nine-year balance of a ten-year franchise and lease.

II.
We are unable to agree with the trial judge's holding that there was a requirement in the franchise agreement for the plaintiff to furnish the licensee with an "exclusive" mix, or that Samila justifiably entertained any such impression when he took over Linden. The opinion of the trial court states that this defense, although pleaded, was not set forth as an issue in the pretrial order, but that it had concluded during the trial, nevertheless, that this question was material, and therefore had directed that it be made an additional issue and that proofs be taken thereon. The court found that such an agreement for an exclusive formula was a part of the arrangement between the parties and that, since the evidence indicated that the plaintiff *446 designated suppliers of the ice-cream mix who supplied exactly the same kind of ice cream to retailers other than members of the Dari-Delite chain, there was a violation of the agreement for exclusiveness of the mix.
We find nothing in the franchise agreement requiring the plaintiff to supply to the defendant "an ice-cream mix of an exclusively uniform high quality which would be sold exclusively only (sic) by members of the Dari-Delite chain," as held by the trial court (emphasis ours). An examination of the agreement indicates that the only mention of the ingredients of the ice cream to be used at the franchised premises is in paragraphs 3 and 7. In paragraph 3 the licensee agrees that it will "use only uniformly high quality ingredients, according to the formula adopted by the first party" (emphasis ours). Paragraph 7 provides that the second party will use "only mix, flavors, cones, cups, cartons, and all other ingredients and materials of uniform high quality * * *. To insure this uniform quality the second party agrees to use only the mix furnished and sold by specified agents designated by Ross Systems * * *" (emphasis ours). It will be noted that the word "exclusive" or other similar characterization of the product to be used is absent from the agreement, as is any representation or undertaking by the plaintiff that no similar product would be made available by designated suppliers to others than the Dari-Delite chain. Since the alleged defense, noticed by the court upon its own initiative, deals only with alleged representations by Dann as to what the agreement provides, it is not established by anything in the testimony, since there is no proof that Dann represented to Samila that the agreement was to the effect stated. As a matter of fact, Samila was represented by a highly qualified lawyer, and a copy of the franchise agreement was furnished to him at the closing of the sale of stock in Linden. A reading of the agreement would clearly indicate to Samila and his counsel that no such representation *447 was contained therein. His counsel was a witness herein and did not testify to any contrary understanding on his part.
Moreover, the pleaded defenses, as set forth in the answer, do not charge a violation of the agreement in the respect held, but solely on the basis that the defendants were defrauded by Dann's entry into the side-agreement with Farmland Dairies aforementioned, "so that independent contractors were able to secure the same mix at a price which was minus this additional charge to defendant Dari-Delite, Inc." Thus the defense, as expressly pleaded in the answer to the amended complaint, was not that the franchise agreement should not be enforced because plaintiff violated an undertaking to supply defendants with an exclusive, special formula, but because the plaintiff, through Dann, its agent, fraudulently exacted an extra $1 per 40 quarts from the defendant by the means stated. And the fact that a defense of failure to supply an exclusive formula was not stated in the pretrial order is further indication that the notion of such a defense was never entertained by the defendants until called to their attention by the trial judge. What Samila was primarily interested in was obtaining the right to sell ice cream under the trade name Dari-Delite. His failure to object at any time to the non-exclusiveness of the mix constitutes a practical construction of the agreement, in harmony with its language and over-all purport, negativing the now asserted defense.
There is, of course, no objection to a trial judge's suggesting, on his own motion, the expansion of the issues from those stated in the pretrial order where he deems it necessary in order to accomplish justice, and adequate opportunity to defend is afforded the parties. Our only difficulty is that the defense developed by the court here was not, in our judgment, justified by the facts.

III.
Our conclusions under Point II herein make it necessary to consider whether defendants' originally projected defense *448 based upon the Dann side-commissions from Farmland is sustainable.
We have no difficulty in coming to the conclusion that what Dann did and the effect thereof upon the price Linden had to pay for ice cream to Farmland constituted a violation of the contract in a material respect. It increased the cost of the product to Linden materially beyond what was contemplated by the franchise agreement. Under the contract the licensee's royalties to plaintiff were expressly stipulated. For Dann, plaintiff's sole agent for the purpose of designating the approved supplier of the mix, to arrange with the supplier for private commissions to himself which were then to be incorporated into the price the licensee was to pay the supplier, was, in effect, to increase the cost to the licensee beyond the purview of the contract terms. For reasons presently to be indicated we need not consider whether what Dann thus did prior to the repudiation of the agreement by defendants is attributable to plaintiff as a violation of the contract by itself as principal thereon, notwithstanding it may not have authorized or benefited from such activity by Dann. The general rule is that a principal is accountable for the deceit of an agent acting within the scope of his authority despite the fact that the fraudulent act itself is unauthorized and the principal receives no benefit. But liability is fixed within the framework of the equitable remedy of restitution, rather than by an action for fraud. Mick v. Corporation of Royal Exchange, etc., 87 N.J.L. 607, 613-615 (E & A. 1914); Kahn v. Liverpool and London and Globe Ins. Co., 3 N.J. Misc. 1015, 1016 (Sup. Ct. 1925); 3 C.J.S. Agency § 257, pp. 190-191; cf. Mesce v. Automobile Association of New Jersey, 8 N.J. Super. 130, 136 (App. Div. 1950). In the present case, however, past breaches of the agreement by Dann, whether or not attributable to plaintiff as principal, must be regarded as having been waived by defendants.
Defendants concede in their brief that the impact of the Dann rebates upon them started with the making *449 of the Dann-Farmland agreement February 15, 1957. Samila admitted on cross-examination that he learned about that arrangement in St. Petersburg, Florida, at about the same time. He and other dealers complained about it to Dann, but Dann sought to justify it on the ground that he used the money to promote the Dari-Delite trade name. But insofar as defendants' legal position is concerned, their failure to declare a breach of the contract and their continuance under its terms for more than a year after having learned of the breach constitute a waiver of their right to declare a forfeiture of the agreement for previous violations by plaintiff. Their choice was conclusive in this respect. Frank Stamato & Co. v. Borough of Lodi, 4 N.J. 14, 21 (1950); 5 Williston, Contracts (rev. ed. 1937), § 1334, pp. 3749-3750.
The foregoing considerations do not, however, dispose of the question as to whether plaintiff should have specific performance of the agreement for the balance of the contract term, which runs until 1964. Even after plaintiff became aware of Dann's illegal activities it made no effort to stop them. Defendants contend, and with logic, that while their past failure to declare a default may constitute a waiver of their right to terminate the agreement in respect of past breaches, they should not be compelled to continue to perform the contract in the future in the face of impending future breaches of the same kind by plaintiff. Dann is still plaintiff's agent, and it is undenied that he intends to continue to exact commissions from designated suppliers for which defendants would have to pay by inclusion thereof in the price of the mix. Prior to the reargument of this case the court informed the parties that it regarded the situation as to the Dann commissions as constituting a violation of the contract vis a vis defendant, and that plaintiff would be required to indicate whether, if the court sustained the contract for the remainder of the term, it would comply with the condition that its agent Dann desist in the future from receiving commissions under *450 circumstances which would increase defendants' price commensurately. At the reargument plaintiff answered this question by stating that it could not control Dann, that the latter insisted he had the right to the commissions, and that the objectionable practices would continue, although contrary to its wishes. It stated a willingness to reimburse defendants for all increases in the price Linden might pay suppliers attributable to the commissions received by Dann from such suppliers.
In our judgment, plaintiff's position amounts to an anticipatory breach of the agreement on its part for the remainder of the term. It professes inability to control its own agent in conduct which the court has indicated to it is a breach of its agreement with Linden in respect of the material subject of consideration. Nor does it drop the recalcitrant agent and designate another to represent it in carrying out the continuing agreement with defendant in the future in such a manner as will not inflate defendants' cost of the product. Defendants do not deem plaintiff's offer of reimbursement as a satisfactory substitute for the stipulated contract performance; nor do we. At the least, it amounts to a series of forced advances of money by defendant for the remainder of the contract term, without consideration therefor. Moreover, it involves a continual bookkeeping nuisance to defendants and poses the prospect that for the remainder of the franchise term they would have to keep posted as to how much Dann might be getting from the supplier and to bill the plaintiff therefor. (Under the practice of the parties Linden has been paying the supplier a single gross price out of which the latter makes the franchise payments to plaintiff and the side-commissions to Dann.) There might also be the prospect of difficulty in verifying the amount of Dann's commissions and satisfying plaintiff of the facts relating thereto. In a sense, plaintiff is voluntarily (insofar as defendants are concerned) rendering itself unable to proffer faithful performance of the agreement; and this is an anticipatory breach. Internal Water Heater *451 Co., Inc. v. Burns Bros., 114 N.J.L. 368, 373 (E. & A. 1935); Restatement of Contracts, §§ 280, 318.
Looked at another way, the same judicial reaction is evoked. Plaintiff is invoking the equitable remedies of specific performance and injunction to enforce a contract for the duration of a future term of years. The court appropriately calls upon it in return to do equity by abstaining from subjecting defendant to a burden beyond its contract obligation. Plaintiff's openly avowed refusal or inability (for reasons which are no concern of defendant) so to comply faithfully with the agreement on its part dictate a denial of the relief it prays. The franchise agreement is at an end.

IV.
Defendants have appealed from the trial court's allowing Dari-Delite of New Jersey, Inc. into the case as a party after the issues presented in the pretrial order were tried, and cancelling the lease between it and Linden consequent upon the determination that the franchise agreement was forfeited because of plaintiff's breach. Since we, too, find a breach of the agreement by plaintiff, albeit on different grounds, we face the question as to the propriety of the trial court's disposition of the leasehold. Linden argues it should be permitted to retain it, the fault for termination of the franchise agreement being that of Dann, who owns Dari-Delite of New Jersey, Inc., lessor to Linden, and beneficiary of any cancellation of the lease of the apparently desirable store location at Wood Avenue. Preliminarily, we express our view that the joinder of Dari-Delite of New Jersey, Inc. was within the trial court's discretionary power to do full justice in the cause, and that defendants were given ample opportunity to offer either proof or argument in opposition to the proposed action.
It was noted above that the trial court declared the lease must be cancelled, as it was intended to constitute an integral part of the original deal with Samila for the conduct of *452 the franchised business. As the litigation has progressively unfolded, however, and in the light of our determinations thus far in this opinion, it seems to us that a fair determination as to the justice and equity of cancelling the lease should depend upon a judicial inquiry into whether such a direction by the court ought not to be made dependent upon a refund by Dann to Samila of a fair proportion of the $10,500 paid by the latter for the stock of Linden. That payment was, in effect, made as consideration for a franchise agreement and a lease both then having nine years to run. The agreement has been forfeited by reason of Dann's fault. If Samila (through Linden) is to lose the leasehold, too, and this at the request of Dann's personal corporation, should Dann not in fairness be required, as a condition, to pay Samila such fair proportion of the $10,500 the latter paid him and Scott as represents the remaining portion of the lease term? We only pose the question, but imply no settled view on it, since Dann is not a party to this action and was not heard below or on the appeal, and we therefore may not bind him by any determination herein. It is our conclusion, however, and we so order, that the cause be remanded for the purpose of permitting defendants to file a third-party complaint, cross-claim or other appropriate pleading against Dann so that the issues posed in the present point of this opinion may be heard. This will permit a just and equitable determination settling all rights and liabilities in reference to these transactions as between defendants, Dann and Dari-Delite of New Jersey, Inc. (but subject to the finality of what will have been decided herein as between the present parties plaintiff and defendants).

V.
There remains for consideration the question as to whether the trial court properly dismissed the counterclaim for recovery of the excess payments made for ice-cream mix attributable to the Dann side-commissions. The payments were ruled voluntary by the trial court. On our own motion *453 we asked the parties to argue the question as to whether the said payments, although made knowingly, were nevertheless to be considered involuntary because made under duress. We have carefully searched the record for evidence of duress. Defendants assert it consists of the justified fear on their part that if they failed to pay the price required they would have been subject to an action like the present one which posed the threat of putting them out of business.
But before submission to the improper demand of another can be regarded as having been under business compulsion the payor must show an absence of any other adequate and immediate relief available to him by which he can protect the threatened interests. Miller v. Eisele, 111 N.J.L. 268, 278, 281-282 (E. & A. 1933); Meier v. Nightingale, 134 N.J.L. 275, 277 (E. & A. 1946). Here the defendants could have refused to pay that part of the price charged them which represented Dann's commissions and defended any action brought against them by him or plaintiff consequent thereon. See McCrory Stores Corp. v. S.M. Braunstein, 99 N.J.L. 166 (E. & A. 1933); Vogel v. Lotz, 26 N.J. Misc. 281, 283-284 (Dist. Ct. 1948).
Moreover, defendants should at least have called the illegal activity of their agent to the attention of plaintiff, and this they never did prior to the filing of their counterclaim.
For the reasons stated we conclude the determination of the trial court as to the voluntariness of the payments must be affirmed. They cannot be recovered.
It results that the judgment is affirmed insofar as it rules against plaintiff on the amended complaint and against defendants on their counterclaim; but reversed as to the determination in favor of Dari-Delite of New Jersey, Inc. and against Linden Dari-Delite, Inc.; and the cause is remanded for further proceedings in conformity with this opinion. No costs on this appeal.
HANEMAN, J.A.D. (dissenting).
I agree with my colleagues in their conclusions insofar as they (1) affirm *454 the judgment against defendants on their counterclaim; (2) reverse the judgment in favor of Dari-Delite of New Jersey, Inc. and against Linden Dari-Delite, Inc. I disagree in the conclusions, both as to the reasoning and result, insofar as they affirm the judgment against plaintiff and remand the cause for further proceedings.
The bases upon which my colleagues affirm the judgment as to plaintiff and remand for further proceedings are that plaintiff (1) has committed an anticipatory breach of contract by reason of its attitude on and response to a question propounded by this court on reargument and (2) refuses to do equity.
Plaintiff was obliged, on reargument, to state, in answer to a court-propounded inquiry, whether, if judgment were granted in its favor, it would give assurance that in the future Dann would desist from obtaining commissions from ice cream suppliers. Plaintiff answered by stating that it could not give any such guarantee but would agree to indemnify defendants should such event occur. This my colleagues determine is an anticipatory breach and is such inequitable conduct as would serve to bar plaintiff from relief.
I conceive that plaintiff should not be denied the relief to enforce the contract by way of specific performance and injunction upon the anticipatory breach of contract theory or upon the maxim that "He who seeks equity must do equity."

I.
At the outset, it must be remembered that it is not every breach by one party to a bilateral contract that results in a discharge of the duty of performance of the other party. The test has been stated in 6 Corbin on Contracts, § 1253, p. 6 (1951), as follows:
"Indeed, it seems best to say that breach by one party never discharges the other party, regarding breach merely as a wrong *455 without regard to the extent and quality of its ill effects. When those `effects' are so material to the interests of the other party that a mere judicial remedy is not sufficient to satisfy the requirements of justice as felt by the community, the legal duty of that other party is either suspended or discharged."
A breach of contract may be total or partial. A total breach of a contract is a non-performance of duty so material and important as to justify the injured party in regarding the whole transaction as at an end. Whether or not a breach is thus material and important is a question of degree. It must be answered by weighing the consequences in the light of the actual custom of men in the performance of contracts similar to the one involved in a specific case. 4 Corbin on Contracts, supra, § 946, p. 809.
Plaintiff's conduct in connection with its position concerning Dann's future conduct does not indicate an intention to renounce or repudiate the Linden contract nor can it be denied that the alleged breach, if any, is partial. Where a partial breach is of a comparatively immaterial part of the contract, not going to the essence, the other party is not justified in refusing to render his agreed performance. Where, however, a breach is of such a nature, even though partial, as to go to the essence of the contract it must then be regarded as a total breach and the other party may be justified in refusing further performance. 4 Corbin on Contracts, supra, § 972, p. 900. Even admitting, merely for the purpose of this opinion, that plaintiff's conduct in refusing to guarantee Dann's future conduct constituted a breach, it was not of such a nature as to go to the essence of the contract.
Additionally, the Dann-Farmland contract for furnishing plaintiff's franchise holders with ice-cream mix has expired and a new dairy  Terwilliger-Wakefield  is presently furnishing the mix. There is no proof that Dann has an existing contract similar to that which he had with Farmland. The possibility of future exactions under the present or any such future contract is mere speculation. There is *456 here not even a concrete threat of a breach of the contract by plaintiff's agent, beyond the scope of his authority and for his own benefit. It does not follow that Dann will continue to conduct himself in the future as he has in the past in the face of our conclusion that he illegally exacted commissions from Farmland. There is here present not even an actual threat of a breach of contract. Plaintiff's action on reargument did not constitute an anticipatory breach.
In Frank Stamato & Co. v. Borough of Lodi, 4 N.J. 14, 21 (1950), the court said:
"In case of `a material breach of contract which does not, however, indicate any intention to renounce or repudiate the remainder of the contract * * * the injured party has a genuine election offered him of continuing performance or of ceasing to perform, and any action indicating an intention to perform will operate as a conclusive choice, not indeed depriving him of a right of action for the breach which has already taken place, but depriving him of any excuse for ceasing performance on his own part.' 5 Williston on Contracts, (Rev. Ed.) 3749."
See also 5 Corbin on Contracts, § 1244, p. 982 (1951).
So here, defendants had knowledge of Dann's exactions in February 1957 and continued voluntarily to recognize the contract and make the payments required thereunder until at least May 1958. My colleagues and I have concluded that any alleged breach resulting from Dann's past conduct was waived by defendants. By the same token, defendants have made a genuine election to continue performance, in spite of such past breaches. This conclusive choice, in the light of the facts, deprives them of any excuse for now refusing future performance on the speculative possibility of Dann's future dereliction.

II.
This leads to the question of whether plaintiff's statement at reargument that it could not guarantee that Dann would *457 in the future cease and desist from receiving commissions from suppliers but that it would agree to indemnify defendants against any such future conduct is of such an unconscionable nature as would warrant a denial to it of the relief here sought.
Short of actual termination of the agency contract with and the discharge of Dann, it is impossible for plaintiff to give an honest positive assurance that Dann will not exact payment from suppliers in the future. Plaintiff is not requested to guarantee its own actions but rather those of a third party. The most that plaintiff can do is to agree to indemnify defendants if such action should occur. Realistically, any action other than discharge of Dann by plaintiff would not meet the requirements of the majority. We can hardly demand that plaintiff terminate its relationship with Dann by a repudiation of whatever contract it has with him as a condition to granting relief.
The agreement to indemnify is a forceful manner of protecting defendants. Under Linden's contract with Ross it is obliged to pay $2.80 per ten gallons of ice cream. Any future inhibited payment to Dann can be offset against this sum and would save defendants harmless. Further, placing plaintiff in such a position should certainly result in a close scrutiny by it of Dann's activities.
A balancing of the equities between plaintiff and defendants in the light of all of the circumstances, and particularly plaintiff's offer of indemnification, forces the conclusion that plaintiff not only has not committed a material anticipatory breach but also, that plaintiff's conduct cannot be stigmatized as unconscionable. Plaintiff is entitled, with an agreement to indemnify against any future exactions by Dann, which it has voluntarily suggested, to obtain the relief it seeks for the enforcement of its contract with defendants.
In the light of the foregoing, I would reverse the judgment against plaintiff and enter a judgment for plaintiff, provided it stipulates that it will indemnify defendants *458 against any future overcharge for ice cream by Dann. Such stipulation, of course, must be made a part of the new judgment.
I would remand for entry of judgment consistent with the foregoing.