**In the Matter of James & Margaret ROSE, Jr., Debtors.**

**GENERAL MOTORS ACCEPTANCE CORP., Plaintiff,**

**v.**

**James & Margaret ROSE, Jr. and Steven B. Fuerst, Trustee, Defendants.**

**Bankruptcy No. 82–0258.**

United States Bankruptcy Court, D. New Jersey.

June 25, 1982.

Psak & Parker, by George L. Psak, Middlesex, N. J., for General Motors Acceptance Corp.

Teich, Groh, Robinson, Kline & Frost, by Barry W. Frost, Trenton, N. J., for debtors.

Steven B. Fuerst, Somerville, N. J., trustee.

## OPINION

AMEL STARK, Bankruptcy Judge.

Plaintiff, General Motors Acceptance Corporation, has filed an adversary complaint naming the debtors, James and Margaret Rose, Jr., and the trustee as defendants, seeking a judgment fixing its lien on a 1977 Dodge automobile, sold to the debtors under a retail installment sales contract, and seeking remedies for the debtors' alleged default of the contract. Plaintiff seeks (a) reclamation of the vehicle, (b) payment of the net outstanding balance due under the contract, or (c) a reaffirmation of the personal liability of the debtors for the full amount of the contract price. Plaintiff claims that it is entitled to relief from the automatic stay of section 362 of the Bankruptcy Code and adequate protection for its security interest, based solely on a default which occurred under the terms of the contract by the filing of the debtors' Petition under Chapter 7 of the Bankruptcy Code.

The trustee has filed an answer in which he avers that he has insufficient information to admit or deny the allegations of the complaint. Inasmuch as the debtors have claimed their equity in this automobile as an exemption under Section 522 of the Bankruptcy Code, and neither the trustee nor any other party in interest has objected to this exemption, it would appear that the trustee has no direct interest in the outcome of this litigation. However, the trustee has not formally abandoned the property.

The debtors have filed an answer in the form of a general denial, and separately have asserted that their payments under

the installment sales contract are current, that they wish to retain possession of the automobile and continue to make payments under the terms of the contract. The debtors, and not the trustee, are the real parties in interest in this adversary proceeding.

*Facts*

There is no dispute as to the facts in this case, and thus, no testimony has been taken.

1. Plaintiff has a perfected security interest in a certain 1977 Dodge automobile, sold to the debtors under the terms of a retail installment sales contract.

2. The debtors filed a Petition under Chapter 7 of the Bankruptcy Code on January 15, 1982.

3. The debtors have always been and are presently current in their payments under the contract, and the vehicle is presently insured against physical damage.

4. The net balance due and owing under the contract as of June 1982 is $2034.09.

5. The parties agree that the fair market value of the automobile is greater than the remaining balance due under the contract.

6. Plaintiff relies solely on the default clause of the contract concerning the filing of a Petition under the Bankruptcy Code. This contract provision reads:

  6. If buyer defaults in any payment due hereunder, or fails to comply with any of the terms or conditions hereof, or a proceeding in bankruptcy, receivership or insolvency be instituted by or against the buyer or his property, or the seller has reasonable cause to believe that the property is in danger of misuse or confiscation, or in the event either that the buyer fails for any reason to comply with paragraph 3(a) above or that said required physical damage insurance ... is cancelled by the insurer prior to expiration thereof, the seller shall have the right, at his or its election, to declare the unpaid instalments hereunder, less the unearned finance charge computed as provided in item 13 on the face of this contract, together with any amount for which the buyer shall have become obligated

hereunder, to be immediately due and payable.

  . . . .

  8. The seller's acceptance of any instalment or payment after it or the full amount may have become due and payable hereunder shall not be deemed to alter or affect, the buyer's obligations or the seller's rights hereunder with respect to any subsequent payments or default therein, nor shall the seller's acceptance of any instalments or payments after any other default hereunder be deemed to constitute a waiver of such other default.

*Issues*

1. Is this retail installment sales contract an executory contract within the meaning of Section 365(e) of the Bankruptcy Code, taking into account that the seller has already delivered the automobile?

2. If the sales contract is not executory, is the "bankruptcy-default clause" valid and enforceable absent any other default under the terms of the contract?

3. Is plaintiff entitled to reclamation, a reaffirmation, or a lump-sum redemption where the debtors' sole default was to file a Petition under Chapter 7 of the Bankruptcy Code?

*Conclusions of Law*

Plaintiff maintains that the clause declaring a default upon the institution of a proceeding under the Bankruptcy Code is a valid, enforceable contractual provision, for the reason that the Bankruptcy Code refuses to give effect to these clauses *only* if they are contained in executory contracts or unexpired leases. Plaintiff argues that its retail installment sales contract is neither an executory contract nor an unexpired lease, and thus, its insolvency clause is valid and enforceable, because Section 365(e) of the Bankruptcy Code does not apply.

It must be determined if the contract in the present case is executory or non-executory within the meaning of the Bankruptcy Code. If this contract is executory, Section

365(e) of the Code applies directly, and the bankruptcy-default clause is unenforceable.

Section 365(e) of the Bankruptcy Code reads as follows:

(e)(1) Notwithstanding a provision in an executory contract or unexpired lease, or in applicable law, an executory contract or unexpired lease of the debtor may not be terminated or modified, and any right or obligation under such contract or lease may not be terminated or modified, at any time after the commencement of the case solely because of a provision in such a contract or lease that is conditioned on—

(A) the insolvency or financial condition of the debtor at any time before the closing of the case;

(B) the commencement of a case under this title; or

(C) the appointment of or taking possession by a trustee in a case under this title or a custodian before such commencement.

The Legislative History to this Section states in part:

Though there is no precise definition of what contracts are executory, it generally includes contracts on which performance remains due to some extent on both sides. A note is not usually an executory contract if the only performance that remains is repayment. Performance on one side of the contract would have been completed and the contract is no longer executory. [House Report No. 95–595, 95th Cong., 1st Sess. 347 (1977); See Senate Report No. 95–989, 95th Cong., 2d Sess. 58 (1978), U.S.Code Cong. & Admin.News 1978, pp. 5787, 6303.]

■ Although all contracts are executory to some degree, 1 *Williston, Contracts* § 14 (3d ed. Jaeger 1957), the weight of authority is that the mere repayment of money pursuant to an installment sales contract, where the goods have been delivered, is not to be characterized as an executory contract for the purposes of the Bankruptcy Code. Countryman, Vern, "Executory Contracts in Bankrupcy: Part I," 57 *Minnesota Law Rev.* 439, 450–457 (1973), and cases cited

therein; *Matter of Bell*, 8 B.R. 549, 551 (Bkrtcy.E.D.Mich.1981), rev'd on other grounds 15 B.R. 859 (E.D.Mich.1981). Professor Countryman has provided the following definition of "executory contract:"

A contract under which the obligation of both the bankrupt and the other party to the contract are left so far unperformed that the failure of either to complete performance would constitute a material breach excusing the performance of the other. [57 *Minnesota Law Review* at 460]

This definition has been widely used in bankruptcy cases. See *In Re Alexander*, 670 F.2d 885, 887 (9 Cir. 1982), and cases cited therein.

In the present case, the only performance remaining on the part of the plaintiff is to collect the payments owed by the debtors and properly account for them. Plaintiff's failure to do so would not constitute a material breach excusing the debtors' performance. The collection of payments is not a material part of this contract. The material obligations under this contract were for plaintiff's assignor to deliver a conforming automobile to the debtors and for the debtors to pay for it over a period of time. Plaintiff's assignor has substantially performed its obligation by delivering the automobile, but the debtors have not yet substantially performed their obligations. Since the "non-bankrupt" party has substantially or materially performed, this contract cannot be termed "executory" within the meaning of the Bankruptcy Code. But see *In Re Horton*, 15 B.R. 403, 405 (Bkrtcy. E.D.Va.1981), where the court implied that a retail sales contract was executory, in a case with similar facts.

■ Given that this court holds that the present contract is non-executory, plaintiff next argues that its bankruptcy-default clause is *per se* valid because it does not come within the prohibition of Section 365(e) of the Bankruptcy Code. Plaintiff does not discuss the possibility that there may be other legal theories under which the bankruptcy-default clause may be invalid, such as state-law contract requirements or

other legal requirements under the federal Bankruptcy Code. It does not *necessarily* follow that just because Section 365(e) of the Bankruptcy Code does not refer to non-executory contracts that they are, therefore, valid. In fact, the opposite conclusion might be inferred, for the Bankruptcy Act, prior to 1979, specifically made such bankruptcy-default clauses enforceable in leases under Section 70b; Congress did not see fit to continue this enforceability.

The *intent* of Congress is clearly seen in the legislative history to Section 365(e) of the Bankruptcy Code, which reads in part:

> Subsection (e) invalidates *ipso factor* [sic] or bankruptcy clauses. These clauses, protected under present law, automatically terminate the contract or lease, or permit the other contracting party to terminate the contract or lease, in the event of bankruptcy. This frequently hampers rehabilitation efforts. If the trustee may assume or assign the contract under the limitations imposed by the remainder of the section, then the contract or lease may be utilized to assist in the debtor's rehabilitation or liquidation. [House Report No. 95–959, 95th Cong., 1st Sess. 348–9 (1977); See Senate Report No. 95–989, 95th Cong., 2d Sess. 59 (1978), U.S. Code Cong. & Admin.News 1978, p. 6304.]

The legislative history indicates that bankruptcy-default clauses are to be invalid in all types of contracts, without limitation. There is no other provision in the Bankruptcy Code which explains the effect of bankruptcy-default clauses in non-executory contracts.

Section 365 of the Bankruptcy Code effected a significant change from the Bankruptcy Act. Section 70b of the Act provided in part that "an express covenant that an assignment by operation of law or the bankruptcy of a specified party thereto or of either party shall terminate the lease or give the other party an election to terminate the same is enforceable." However, even in applying Section 70b of the Bankruptcy Act, courts did not enforce bankruptcy-default clauses in all cases. Courts refused to enforce these clauses if they were inconsistent with other provisions of the Bankruptcy Act or if they were inequitable in the particular circumstances before the court. *Matter of Garfinkle*, 577 F.2d 901, 905 (5 Cir. 1978); in *Smith v. Hoboken Railroad*, 328 U.S. 123, 66 S.Ct. 947, 90 L.Ed. 1123 (1945), the Supreme Court held that a forfeiture clause in a railroad lease could not be enforced unless the Interstate Commerce Commission determined that it would be consistent with the public interest and the debtor's reorganization requirements. In *Queens Boulevard Wine & Liquor Corp. v. Blum*, 503 F.2d 202 (2 Cir. 1974), the court held that the bankruptcy-default clause could not be enforced because it was grossly inequitable and contrary to the purpose of Chapter XI of the Bankruptcy Act; the court in *In Re Fleetwood Motel Corp.*, 335 F.2d 857 (3 Cir. 1964), refused to enforce the bankruptcy-default clause where the public had over a half-million dollars invested in the debtor corporation and no plan for reorganization could be formulated without the property subject to the default. In the cited cases, what appeared to be a clear statutory mandate was disregarded in order to foster equity and the loftier *purposes*, rather than the strict letter, of bankruptcy law.

Under the Bankruptcy Code, there is no statutory mandate that bankruptcy-default clauses are valid and enforceable. The only Congressional statement is clear that in most, if not all, instances, such clauses are *not* enforceable. Also, cf. Sections 363(*l*) and 541(c)(1)(B) of the Bankruptcy Code, where bankruptcy-default clauses are not given effect. Thus, there is simply no reason to assume that Congress intended to make these clauses enforceable only in non-executory contracts. Such an assumption would be directly contrary to the spirit and purposes of the Bankruptcy Code. One of the objectives of bankruptcy laws is to enable debtors to make a fresh start. *In Re Bradford*, 6 B.R. 741, 744, 3 C.B.C.2d 39 (D.Nev.1980). Bankruptcy matters are also inherently proceedings in equity, *Katchen v. Landy*, 382 U.S. 323, 336–337, 86 S.Ct. 467, 476, 15 L.Ed.2d 391 (1966), and must foster equitable results.

A bankruptcy-default clause, if valid and enforceable, would defeat the purpose of providing a "fresh start" to debtors. *In Re Horton*, 15 B.R. at 405. Enforceability of these clauses would, in effect, render a penalty on debtors. In the present case, the debtors' payments are current, and they have continued all necessary insurance to protect plaintiff's security interest. Admittedly, the debtors do not have the total remaining lump-sum payment due on this car. Thus, plaintiff's remedy would be a reclamation of the vehicle, allowing it to benefit from the equity in the vehicle, over and above the remaining amount due on the sales contract. Plaintiff would benefit to the detriment of the debtors. There is nothing in the bankruptcy laws which could sanction such a penalty as to the debtors, creditors or trustee, who in many instances will have an interest in the proceedings. This is especially true in the instant case as to the debtors, since they have not reached the limit of their allowable exemptions under Section 522 of the Bankruptcy Code.

Plaintiff's argument that it is not adequately protected unless it can immediately reclaim the vehicle or force the debtors to reaffirm their personal liability is meritless. Plaintiff claims that it is not adequately protected because its equity in the automobile is only several hundred dollars, and there is a chance that the car will not be properly maintained or that the insurance might lapse, leaving it with no remedy in the event of loss. However, plaintiff concedes that there is presently some equity in the vehicle and that "[i]f depreciation proceeds at a normal rate, the car will probably continue to be worth more than it is owed."

There is no doubt that, at the present time, plaintiff is adequately protected. There is equity in the car; the debtors' payments are current, and the vehicle is insured for physical damage. Plaintiff's argument as to adequate protection is entirely speculative, and the facts it alludes to may never occur. Even if a disaster occurred, in which insurance coverage lapsed, and plaintiff could not repossess or re-insure the vehicle before it was destroyed, plaintiff would be no worse off than it would have been if this disaster occurred *before* the filing of the bankruptcy Petition. If these circumstances had occurred before the filing, plaintiff's collateral would be gone, and it would have only a general claim against the debtor's estate. Any recovery would be unlikely.

Thus, if the insurance lapses after the filing of the Petition, plaintiff will not suffer any different or more severe detriment by the debtor's lack of personal liability on this loan. A secured party must also be diligent in protecting its collateral to be certain insurance is maintained. In addition, it is illogical to assume that the debtors will not try to protect and maintain their vehicle, since they are the ones who will benefit from the equity.

Plaintiff would have a remedy if a default occurred in the payments or insurance. In such an event there would be danger to plaintiff's security, and it would be entitled to relief from the automatic stay. However, under the facts here, there has been no "cause" justifying relief from the stay under Section 362(d) of the Bankruptcy Code and no lack of adequate protection. The enforcement of the bankruptcy-default clause bears no reasonable relationship to the protection of plaintiff's security, and would defeat the purposes of the Bankruptcy Code. It cannot be enforced by a court of equity. Of course, if a default occurred in the payments or insurance, plaintiff would be entitled to relief.

This court declines to follow the contrary inferences which might be drawn from the holdings in *In Re Whatley*, 16 B.R. 394 (Bkrtcy.N.D.Ohio 1982), and *In Re Bell*, 15 B.R. 859 (E.D.Mich.1981), rev'g 8 B.R. 549 (E.D.Mich.1981). The court in *In Re Whatley* held that a retail installment sales contract for an automobile was non-executory, and then perfunctorily concluded that Section 365(e) of the Bankruptcy Code did not apply. 16 B.R. at 398. As previously discussed, this court disagrees with such an analysis. The court in *Whatley* also held that there was no authorization to *require* either a creditor or a debtor to enter into a

reaffirmation agreement and that a redemption under Section 722 of the Bankruptcy Code must be made in a lump-sum and not in installments over a period of time. This court agrees with that conclusion and notes that, at oral argument, neither party in this case seriously argued that any party could be forced to agree to a reaffirmation.

The Bankruptcy Court in *Matter of Bell*, 8 B.R. at 552, refused to enforce a bankruptcy-default clause, and would not allow the creditor to reclaim an automobile. Although the District Court reversed, it provided no analysis of the validity or enforceability of the clause and stated only that Section 722, allowing for lump-sum redemption, or Section 524(c), allowing for reaffirmation, was the exclusive remedy for a debtor wishing to retain secured property. 15 B.R. at 861. However, the trustee in that case sought to abandon the automobile, and it does not appear that its value was greater than the amount of the loan due to the creditor; in that case, the creditor was not adequately protected. Thus, the District Court opinion is not determinative in deciding the issue before this court, i.e. whether bankruptcy-default clauses are valid and enforceable absent any other default in the contract, where the secured party is adequately protected.

In addition to this court's holding that such clauses conflict with federal bankruptcy law, the validity of these clauses under New Jersey law is also doubtful. It might be argued that in the absence of any pronouncement in the present Bankruptcy Code as to the validity of bankruptcy-default clauses, state law should govern their validity. See *In Re United Merchants & Mfrs., Inc.*, 674 F.2d 134, 137 (2 Cir. 1982), and *Matter of Scarboro*, 13 B.R. 439, 442 (M.D.Ga.1981).

It is clear that New Jersey courts do not look with favor upon forfeiture clauses in contracts. The New Jersey Supreme Court provided the following analysis in *Lehigh Valley R. R. Co. v. Chapman*, 35 N.J. 177, 188, 171 A.2d 653 (1961), cert. den. 368 U.S. 928, 82 S.Ct. 364, 7 L.Ed.2d 192 (1961):

The common and general definition of the word "forfeit," is "lost by omission or negligence or misconduct." It is in this general sense that the word "forfeiture" is used when it is said that equity will not actively lend its aid to enforce a forfeiture or that equity will relieve against unjust forfeitures. A forfeiture is in the nature of a penalty for the doing or the failure to do a particular thing, ... To incur a forfeiture is to fail to keep an obligation.... Penalties and forfeitures are not favored at law, ... but, contrawise, it has been said that the "law abhors a forfeiture." ... A recognized rule of construction dictates that an instrument, when a choice exists, is to be construed against rather than in favor of a forfeiture. [citations omitted]

See also *Carteret Properties v. Variety Donuts, Inc.*, 49 N.J. 116, 127, 228 A.2d 674 (1967). In addition to disapproving of forfeiture clauses, the New Jersey Supreme Court has also held certain provisions in retail contracts void as against public policy given consumers' inequity in bargaining power, and stated as follows:

Public policy is a term not easily defined. Its significance varies as the habits and needs of a people may vary. It is not static and the field of application is an ever increasing one. A contract, or a particular provision therein, valid in one era may be wholly opposed to the public policy of another.... [courts] do not hesitate to declare void as against public policy contractual provisions which clearly tend to the injury of the public in some way. [*Henningsen v. Bloomfield Motors, Inc.*, 32 N.J. 358, 403–404, 161 A.2d 69 (1960)]

The New Jersey Legislature has specifically stated that unconscionable clauses in retail sales contracts are unenforceable in New Jersey. N.J.S.A. 12A:2–302. As a matter of public policy in New Jersey, citizens also have the right to seek protection from creditors under federal bankruptcy laws or state insolvency laws. Given this public policy and New Jersey's clear aversion to forfeiture clauses, this court is confi-

dent that New Jersey would refuse to enforce bankruptcy-default clauses where consumers would suffer a great detriment and the creditors a benefit.

It seems possible that New Jersey has not yet made such a pronouncement because it would have conflicted with Section 70b of the Bankruptcy Act. State courts could not have decided a case contrary to federal law. That section was only repealed in the last few years. Thus, this court holds that bankruptcy-default clauses are also invalid under state law.

■ In addition, there is an alternative reason for this court's holding. The bankruptcy-default clause and the no-waiver clause in the retail sales contract are not capable of being construed in a manner consistent with each other. Therefore, they are ambiguous and must be construed against the drafter of the contract and in favor of the consumer. *Matter of Community Medical Center*, 623 F.2d 864, 866 (3 Cir. 1980).

Paragraph number 6 of the sales contract gives the seller only "the right, at his or its election, to declare the unpaid instalments . . . to be immediately due and payable" upon the commencement of a "proceeding in bankruptcy." The no-waiver clause is reproduced here in full:

8. The seller's acceptance of any instalment or payment after it or the full amount may have become due and payable hereunder shall not be deemed to alter or affect, the buyer's obligations or the seller's rights hereunder with respect to any subsequent payments or default therein, nor shall the seller's acceptance of any instalments or payments after any other default hereunder be deemed to constitute a waiver of such other default.

It is difficult to reconcile the creditor's "acceptance of any . . . payments after any other default" as *not* constituting a waiver of the other default because paragraph number 6 gives the creditor the sole remedy of declaring all unpaid installments to be immediately due and payable. In the present case, plaintiff continued to accept the unpaid installments as they became due, as if there were never a technical breach under the terms of the contract. Plaintiff's sole remedy in the event of a breach of the bankruptcy-default clause was to declare the entire remaining amount due; it did not do this. Under the no-waiver clause plaintiff might argue that it still had not waived its right to declare the entire amount due. However, the debtors filed only one Petition in the Bankruptcy Court, and plaintiff should have elected its remedy at that time. The bankruptcy-default clause gave plaintiff only one remedy, and the no-waiver provision ambiguously attempts to provide multiple remedies. Given this ambiguity, the clauses will be interpreted against the drafter, so that paragraph six provides the sole remedy for any breach, assuming there is any possible basis for the enforcement of the bankruptcy-default clause. Since plaintiff did not immediately declare the remaining amount due and payable, the sole remedy in the event of a default, this court holds that plaintiff has waived its right to enforce the bankruptcy-default clause. *Ross Systems v. Linden Dari-Delite, Inc.*, 62 N.J. Super. 439, 449, 163 A.2d 184 (App.Div. 1960), aff'd in part, rev'd in part 35 N.J. 329, 173 A.2d 258 (1960). Thus, even if the bankruptcy-default clause might be construed as enforceable, plaintiff is not entitled to enforce it against the debtors here. Plaintiff accepted the monthly installment payments after the alleged default occurred and waived its right to declare the entire remaining sum due at any time after the debtors' Petition was filed.

*Conclusion*

Plaintiff is not entitled to reclamation of the vehicle, a reaffirmation of the installment sales contract on terms acceptable to it or a lump-sum redemption pursuant to Section 722 of the Bankruptcy Code, where the debtors' sole default was to file a Petition under Chapter 7 of the Bankruptcy Code. Plaintiff is adequately protected because there is equity in the vehicle and monthly payments and insurance are current. The bankruptcy-default clause is invalid and unenforceable under both federal

and state law. In the alternative, plaintiff has waived its right to enforce the bankruptcy-default clause, if valid, by accepting installment payments up to the present time and failing to immediately elect its remedy of declaring the entire amount due and payable upon the filing of the Petition. Under either alternative, plaintiff is not entitled to relief from the automatic stay of Section 362 of the Bankruptcy Code.

Let an order be submitted fixing the plaintiff's lien on the automobile in the amount of $2034.09 as of June 23, 1982, but denying the remainder of the relief sought in plaintiff's complaint and allowing the debtors to retain possession and ownership of the automobile as long as they make the installment payments as due and maintain required insurance.