FRANK STAMATO & CO., A CORPORATION, PLAINTIFF-APPELLANT, v. BOROUGH OF LODI, A MUNICIPAL CORPORATION, DEFENDANT-RESPONDENT.

Argued January 16, 1950—Decided February 14, 1950.

*Mr. Aaron Heller* argued the cause for the appellant (*Messrs. Heller & Laiks,* attorneys).

*Mr. Martin J. Di Maria* argued the cause for the respondent (*Messrs. Di Maria & Di Maria,* attorneys).

The opinion of the court was delivered by

VANDERBILT, C. J.   On February 26, 1943, the plaintiff corporation entered into a written contract with the defendant borough for furnishing scavenger service in the borough for a term of two years and ten months, commencing March 1, 1943.   By the contract the plaintiff agreed to make separate collections of combustible and non-combustible refuse and to dispose of the combustible material at the North Jersey Incinerator in Lodi or wherever else directed by the defendant (a service which the defendant borough agreed by the contract to furnish) and to cart the non-combustible material to dumping grounds likewise to be provided by the defendant.   The specifications of the contract stipulated that the borough would strictly enforce the rule requiring the residents of Lodi to keep their garbage, which was defined as table and food waste only, in separate receptacles.

During the first month of collections under this contract the North Jersey Incinerator, claiming that the garbage being delivered to it by the plaintiff as combustibles also contained non-combustible material, refused to accept further deliveries from the plaintiff.   The plaintiff thereupon notified the mayor and street superintendent of the borough and was directed by them to take both the combustibles and the non-combustibles to the defendant's dump in Lodi.   In June, 1943, because of complaints made to and by the State Board of Health, the defendant's dump was closed and the plaintiff duly notified the mayor of this fact.   The mayor told the plaintiff's president that the borough was to blame but that nothing could be done about the matter and that the plaintiff would

have to find its own dumping grounds. No formal demand, however, was ever made by the plaintiff upon the borough to furnish new dumping facilities, nor was the mayor ever expressly authorized to speak for the governing body of the borough. Although the plaintiff's representative appeared before the council of the borough informally on numerous occasions at its finance meetings to present the situation and the members of the council were well aware of the turn of events, the governing body never took any formal action, apparently relying on the provisions of the contract that "the said contractor shall or will not claim or be entitled to any compensation for any extra work performed under this contract. It shall be presumed that any and all work is done as part of this contract and compensation for the same is included in the amount to be paid monthly, as above expressed, and no further compensation for the same shall be charged or collected therefor.".

The plaintiff seeks to recover the costs of renting dumping grounds after the defendant failed to supply them as well as the added expense of hauling its collections thereto, all of which are alleged as damages flowing directly from the defendant's breach of its obligation to supply dumping grounds. The defendant by way of separate defense alleged that it had never authorized the plaintiff to act as it did in obtaining other dumps and that it did not ratify the plaintiff's acts in so doing. It also counterclaimed against the plaintiff on the ground that the plaintiff had breached the contract by failing to segregate combustible garbage from its non-combustible collection of refuse and that by virtue of this alleged breach of contract the plaintiff was unjustly enriched.

The pretrial conference order stated that the action was one to recover damages arising out of the breach of a written contract; that "defendant maintains that there was no official action on the part of the defendant municipality other than the contract itself; that the contract was carried out by defendant and that all moneys due thereunder were paid; and charges that the plaintiff itself breached the contract" and was therefore liable to the defendant. The case was tried

and submitted to the jury on the basis of the issues set forth in the pretrial order, the jury returning a verdict in favor of the plaintiff for $11,250 on the complaint and a verdict of no cause of action on the defendant's counterclaim. On appeal the Appellate Division reversed the judgment below in favor of the plaintiff (but not the judgment of no cause of action on the defendant's counterclaim) on the ground that "on the failure of the defendant to furnish dumping grounds, the plaintiff was relieved from a further performance of his contract and had its cause of action for damages" and "since the plaintiff in hiring these dumping grounds and in involving itself in the expense of cartage thereto, acted without contractual authority and without authorization or ratification by the defendant, the defendant cannot be held liable." We thereupon granted the plaintiff's petition for certification.

On the appeal here the plaintiff contends (1) that notwithstanding the breach of the contract by the defendant the plaintiff was legally entitled to complete its performance of the contract and to sue the defendant for damages resulting from the breach; (2) that no ratification of the plaintiff's acts in completing the contract was necessary in order to subject the municipality to liability for damages arising out of its breach of the contract; and (3) that the Appellate Division erred in basing its decision upon a theory different from that on which the case was tried.

The defendant's failure to furnish the plaintiff with dumping grounds constituted a substantial breach of its contractual obligation to the plaintiff. So also was its failure to carry out its agreement "that the rule requiring residents to keep garbage in separate receptacles will be strictly enforced by the Borough of Lodi." Indeed, it was this latter default which undoubtedly led to the commingling of combustibles and non-combustibles, with the result that the North Jersey Incinerator refused to accept deliveries from the plaintiff. Notwithstanding these two vital breaches of its contractual undertakings, the defendant did not, however, at any time repudiate the contract. On the contrary, it took the

position that in spite of its substantial defaults under the contract the plaintiff was nevertheless obligated to perform its part of the contract and to do so, moreover, without extra compensation for the additional expense to which it had been put by the defendant's misconduct. In its counterclaim the municipality sought to recover damages for the "unjust enrichment" alleged to have arisen from the collection of the refuse of the borough without separating it into combustibles and non-combustibles. This position flies in the face of the plain language and obvious meaning of Section 4 of the specifications, which provides as follows:

"The term Garbage includes table and food wastes only and it is understood and agreed that the rule requiring residents to keep garbage in separate receptacles will be strictly enforced by the Borough of Lodi. Contractor will be required to make separate collection of combustible waste and non-combustible waste in order that the said combustible waste may be disposed of at the North Jersey Incinerator at Lodi, or wherever designated by the Mayor and Council of the Borough of Lodi; and the said non-combustible material will be disposed of and dumped where designated, within the limits of the Borough of Lodi or out of the limits of the Borough of Lodi."

Nothing could be clearer from the arrangement of the provisions of this specification than that the performance by the borough of its undertaking to enforce its rule as to the separation of garbage by its residents was a condition precedent to the plaintiff's obligation to make a separate collection of combustible waste and non-combustible waste. The contract did not cast on the plaintiff the duty of separating the garbage from the other refuse of each householder; it was required merely to make separate collections of previously separated garbage and non-combustible waste. The initial default in the case was that of the borough in failing to enforce its rule on its residents as it had undertaken to do. This default was compounded by failing to designate further dumping grounds when the ones originally chosen by it became unavailable through its misconduct. The fundamental difficulty is that the defendant borough seems to have regarded the provision quoted in the second paragraph of this opinion against the contractor being entitled to any extra

compensation as controlling the financial relations of the parties under the contract in any and all events and quite without regard to its own wrongdoing.

The fact that the defendant has been guilty of substantial breaches of essential obligations under the contract would ordinarily give the plaintiff the right to deem itself discharged from further performance and to sue the defendant for damages under the contract. But this is not always the injured party's only course of action. In a case of "a material breach of contract which does not, however, indicate any intention to renounce or repudiate the remainder of the contract * * * the injured party has a genuine election offered him of continuing performance or of ceasing to perform, and any action indicating an intention to perform will operate as a conclusive choice, not indeed depriving him of a right of action for the breach which has already taken place, but depriving him of any excuse for ceasing performance on his own part." 5 *Williston on Contracts* (*Rev. Ed.*) 3749.

Although it is well established that a party who has been injured by a breach of contract must make reasonable efforts to mitigate his damages, *Ramsey v. Perth Amboy Shipbuilding Engineering Co.,* 72 *N. J. Eq.* 165 (*Ch.* 1906); affirmed, 73 *N. J. Eq.* 742 (*E. & A.* 1908), where, as here, the substantive law authorizes him to complete his performance under the contract, he is entitled to recover the damages necessarily caused by the defendant's breach. The defendant has not introduced any evidence to show that the cost of the steps taken by the plaintiff on the defendant's breach of its obligation to furnish dumping grounds was not kept to a minimum. On the contrary, had the plaintiff not carried out its contract, the defendant itself would have been under the public duty to remove or cause to be removed the garbage and other refuse of the borough; and to have done so in the circumstances of the unwillingness of the North Jersey Incinerator to accept garbage and of the State Board of Health to permit dumping in the borough dump would have meant that it would have been forced to go outside the municipality exactly as the plaintiff was and to incur a simi-

lar expense. See 5 *Williston on Contracts* (*Rev. Ed.*) 3696, where the learned author states that "It need not be contended that in every case the principle of damages in question will deprive the plaintiff of the right to continue performance of the contract after it has been repudiated. There may be cases where so doing will not needlessly enhance damages, and it is a question of fact in every case whether such enhancement of damages will be caused." The defendant preferred, however, without any sanction in law to seek to hold the plaintiff to its contract without paying it for the expenses which the borough's defaults had caused.

Although it does not become necessary to pass on the question because of the plaintiff's election to continue its performance in spite of the defendant's breaches, there is a grave question as to whether or not in a contract such as this involving the public health of a community the plaintiff would have had the right to refuse performance, even though the defendant had been guilty of substantial wrongdoing

After the defendant had failed to supply new dumping grounds the mayor of the defendant borough stated to the president of the plaintiff corporation, "Frank, we are to blame. There is nothing I can do about it. You will have to go out and find your own dumps outside of the municipality." It is argued by the defendant that the mayor had no authority to authorize the plaintiff to seek new dumps and that the plaintiff would have been justified in so doing only by formal action of the governing body of the defendant or other ratification and reliance is placed on *Campbell v. Hackensack*, 115 *N. J. L.* 209 (*E. & A.* 1935), and *Giardini v. Dover*, 101 *N. J. L.* 444 (*Sup. Ct.* 1925). But neither of these cases is applicable to the facts presently before us. In each of the cited cases originally there was no effective and binding contract and official ratification became essential if the plaintiff were to recover. Here there was a valid subsisting contract between the parties in spite of the failure of the defendant to perform two of its most important undertakings thereunder. No action, formal or otherwise, by the defendant municipality was required to permit the plaintiff

to carry out its part of the contract or to sue the defendant for the additional expenses incurred by the plaintiff by reason of the defendant's default. The fallacy of the defendant's argument flows from a misapprehension of the significance of the mayor's statement above quoted. The plaintiff's right to continue to perform its contract in spite of the defendant's breaches does not depend at all on the mayor's statement; the plaintiff would have had the right, if not the duty, of continued performance even if the mayor had never made the admission he did. The plaintiff does not sue on the theory of a new or supplemental contract but for a breach of the original and only contract between the parties, a contract, moreover, which obviously requires no ratification by the defendant before suit. To hold otherwise would produce the absurd result requiring a non-defaulting party to a contract to get the permission of a defaulting party to the contract to bring suit. Equally untenable is the suggestion that the provision of the contract against compensation for extra work quoted in paragraph 2 hereof can save the defendant from liability for additional expense caused by the defaults of the defendant under the contract. The recovery of damages directly attributable to the defendant's defaults are in nowise "compensation for any extra work;" such damages are merely the relief which the law gives the plaintiff for the defendant's failure to perform its undertakings. The defendant cannot escape liability for the damage it has caused merely by paying the plaintiff the stipulated contract price.

In view of the conclusions here reached, we find it unnecessary to examine the third point raised by the appellant.

The judgment of the Appellate Division of the Superior Court is reversed.

*For reversal*—Chief Justice VANDERBILT, and Justices CASE, HEHER and ACKERSON—4.

*For affirmance*—Justices OLIPHANT, WACHENFELD and BURLING—3.