KOCH MATERIALS COMPANY,
Plaintiff,

v.

SHORE SLURRY SEAL, INC., and
Asphalt Paving Systems, Inc.,
Defendants.

Shore Slurry Seal, Inc., Counterclaim
Plaintiff,

v.

Koch Materials Company,
Counterclaim
Defendant.

Civil Action No. 01–2059.

United States District Court,
D. New Jersey.

July 16, 2002.

Stephen B. Nolan, Stradley, Ronon, Stevens & Young, LLP, Cherry Hill, NJ, John R. Ferguson, Jonathan P. Guy, L. Misha Preheim, Swidler Berlin Shereff Friedman, LLP, Washington, DC, Michael A. Ceramella, Koch Industries, Wichita, KS, for Koch Materials Company.

Neil C. Schur, Stevens & Lee, P.C., Cherry Hill, NJ, Carl W. Hittinger, Donald E. Wieand, Jr., Stevens & Lee, P.C., Philadelphia, PA, for Shore Slurry Seal, Inc.

Frederic L. Shenkman, Howard E. Drucks, Cooper Perskie April Niedelman Wagenheim & Levenson, Atlantic City, NJ, for Asphalt Paving Systems, Inc.

## OPINION

ORLOFSKY, District Judge.

## I. INTRODUCTION AND PROCEDURAL HISTORY

This case presents me with a request to "reconsider" an issue that was never presented for my initial consideration. Because acceding to the request for reconsideration would mean that many months of work by the parties and this Court would become, in effect, a grand waste of time, I must reject it. That outcome is particularly unfortunate for the moving party here, where the basis for reconsideration is very likely correct. It therefore serves as a useful reminder to the Bar of the importance of compliance with the summary judgment procedures.

On June 12, 2002, I granted in part a Motion for Partial Summary Judgment filed by the Plaintiff, Koch Materials Company ("Koch") and also decided various Cross–Motions filed by the Defendants, Shore Slurry Seal, Inc. ("Shore") and Asphalt Pavings Systems, Inc. ("Asphalt"). *See Koch Materials Co. v. Shore Slurry Seal, Inc.*, 205 F.Supp.2d 324 (D.N.J. 2002).[1] In particular, I held that on April 3, 2001, Koch had reasonable grounds for seeking assurances that Shore would perform the contract between the two parties. I also held that Koch sought such assurances with sufficient formality to oblige Shore to answer, and that, as of May 3, 2001, Shore did not provide commercially reasonable assurances that it would be able to perform.

Koch had also sought Partial Summary Judgment on Shore's Counterclaim against it. Also on June 12, 2002, in a separate Order, I largely granted Shore's Motion to Continue Koch's Partial Summary Judgment Motion. I based my decision primarily on the fact that Shore had alleged a colorable argument that Koch had breached its agreements with Shore, including both an earlier settlement agreement between Shore and Koch and also the underlying contracts in the dispute.

Shore filed this timely Motion for Reconsideration on June 21, 2002. Shore also asks me to certify a portion of my June 12, 2002 Opinion and Order for immediate appeal, pursuant to 28 U.S.C. § 1292(b), and to stay that Order pending my resolution of both motions.

For the reasons stated below, I will deny both the Motion for Reconsideration

---

1. Interested readers may also discover the factual background of these proceedings, including the precise content of the correspondence exchanged between the parties, at *Koch*, at 328–330.

and the Motion for Certification, and deny the Motion to Stay as moot.

## II. DISCUSSION

### A. The Reconsideration Motion

#### 1. Standard

■ The Local Civil Rules of this Court provide for reconsideration of "matters or controlling decisions which ... the Judge ... has overlooked," L. Civ. R. 7.1(g). The Rule does not encompass matter overlooked by counsel, *see Polizzi Meats, Inc. v. Aetna Life & Cas. Co.*, 931 F.Supp. 328, 339 (D.N.J.1996), nor is it an avenue for parties to vent their simple disagreement with the Court's initial decision, *see In re Consol. Parlodel Litig.*, 22 F.Supp.2d 320, 329 (D.N.J.1998). In the absence of newly discovered evidence or intervening change in the law, a party cannot present on reconsideration a basis for decision it could have, but did not, raise in its initial motion. *See N. River. Ins. Co. v. CIGNA Reinsurance Co.*, 52 F.3d 1194, 1218–19 (3d Cir. 1995).

#### 2. Whether this Court "Overlooked" Shore's Arguments

■ Shore contends that the June 12, 2002 Opinion and Order overlooked at least three pertinent sets of facts. Most prominently, Shore claims that, in concluding that Koch had the right to treat Shore's repudiation as a breach of the contracts between the parties, this Court overlooked the fact that Shore's counterclaim alleges that Koch had itself breached the contract before the time of the repudiation.

I agree that the June 12, 2002 Opinion and Order did not address the relevance of Shore's Counterclaim. *See Koch,* 205 F.Supp.2d at 329 n. 2. I also agree that, under New Jersey law, a party themselves in breach of a contract probably cannot press the obligations of the contract on their contractual counterparty. *See Nolan v. Lee Ho,* 120 N.J. 465, 472, 577 A.2d 143 (1990) (per curiam) (citing *Stamato & Co. v. Borough of Lodi,* 4 N.J. 14, 71 A.2d 336 (1950)). Unfortunately, Shore never presented this argument in opposition to Koch's Summary Judgment Motion, or as a basis for continuing the Motion pending discovery pertaining to Koch's alleged breach. I therefore cannot consider it now. *See North River,* 52 F.3d at 1218–19; *see also Kona Enters., Inc. v. Estate of Bishop,* 229 F.3d 877, 890 (9th Cir.2000); *Steele v. Young,* 11 F.3d 1518, 1520 n. 1 (10th Cir.1993); *Grumman Aircraft Eng'g Co. v. Renegotiation Bd.,* 482 F.2d 710, 721 (D.C.Cir.1973); *Krock v. Elec. Motor & Repair Co.,* 327 F.2d 213, 215 (1st Cir. 1964). I acknowledge that there is now a potential risk of somewhat inconsistent outcomes. Shore, however, must bear the burden of its own omissions. Otherwise, litigants, who too often will desire to delay, to increase the expense of litigation for their opposition, or simply to economize on their own research costs, will not have sufficient incentive to consolidate all the pertinent facts and law together in one summary judgment motion.

■ Shore also contends that I should reconsider my determination that Koch had a commercially reasonable basis for seeking assurances that Shore would perform under the Novachip Sublicense Agreement. As its principal basis for this claim, Shore points to an agreement between itself and another contractor, Gorman, under which, Shore claims, the second contractor was to fulfill some portion of Shore's obligations. Shore claims that Koch should have known that its agreement with Gorman "guaranteed" Shore's performance. Shore's Br. at 9. The Summary Judgment record, however, does not disclose what portion of Shore's obligations Gorman would fulfill. It is possible, therefore, that Koch expected Shore to meet some of its obligations by selling to parties other than Gorman.

More significantly, Capoferri's letter to Koch stated that Shore would assign "any and all existing ... contracts" to its buyer. *Koch*, 205 F.Supp.2d at 328. If the buyer obtained its Novachip product for sale to Gorman directly from Koch, Shore would be left with no obvious way to comply with the Sublicense Agreement, other than selling to new parties. As I stated in the June 12, 2002, Opinion, "[e]ven assuming that historically, Shore had met most of its Novachip obligations by selling sublicenses to third parties ... any reasonable person would wonder how Shore planned to sell anything with" no resources or personnel. *Koch*, 205 F.Supp2d at 331.

Shore claims, however, that the language of the March 16, 2001 letter makes clear that Shore intended to retain control of the Gorman contract. The letter stated:

> Given that the Nova Chip Sublicense Agreement is not part of this proposed asset sale, Shore Slurry Seal, Inc. will continue to exist beyond the closing date in order to primarily collect and remit Nova Chip royalties on behalf of Koch Pavement Solutions.

*Koch*, at 328. Shore's *ex post* reading, however, fails to explain the meaning of Capoferri's claim that Shore would be selling "any and all" of Shore's contracts. A reading that makes sense of both clauses is that Shore intended to assign the Gorman contract to Shore's purchaser, but continue selling sublicenses to other contractors.[2] Nor could Koch have discounted that pos-

sibility as "irrational," Shore's Br. at 8, because Shore could well have been compensated for the potential risks of such an approach by its purchaser. Any reasonable fact-finder would, therefore, conclude that it was reasonable for Koch to seek clarification which of these two equally plausible interpretations—one possibly quite inimical to Koch's interests—Shore intended. Accordingly, to the extent that the June 12, 2002 Opinion overlooked the existence of the Gorman contract, that fact would not change my decision to grant summary judgment.[3]

For similar reasons, I must reject Shore's contention that this Court overlooked any pertinent facts or law relating to the adequacy of Koch's letter demanding assurances. I fully considered the arguments and authorities (as well as the somewhat disingenuous misreadings of authorities) Shore raises now when I decided this issue previously, and found them so unpersuasive as to be unworthy of specific rebuttal. Nothing has happened since that time to change my mind. Nor would Shore's Answer, even if it were timely, constitute a reasonably adequate assurance of performance in this case.

Therefore, I will deny Shore's Motion for Reconsideration.

### B. The Motion for Certification

■ Shore also asks that I certify a portion of the June 12 Opinion and Order for immediate appeal, pursuant to 28 U.S.C. § 1292(b) (2000).[4] As the statute

---

2. Shore may even have viewed itself as free to sell within Gorman's exclusive territory once the Gorman contract had been transferred to Shore's purchaser.

3. Shore also claims that Capoferri's assertion, in his March 16, 2001 letter, that Shore would "continue to exist" to collect royalties should have assuaged any of Koch's doubts. Shore is confused about the timing of its obligations; it was required to provide assurances *after* Koch sought them, not before.

4. The statute provides, in relevant part, that:

> When a district judge, in making in a civil action an order not otherwise appealable under this section, shall be of the opinion that such order involves a controlling question of law as to which there is substantial ground for difference of opinion and that an immediate appeal from the order may materially advance the ultimate termination of the litigation, he shall so state in writing in such order .... That application for an

**422**

states, before I can certify a question for interlocutory appeal, the question must be "controlling," that is, it must at least constitute reversible error if wrongly decided, *see Katz v. Carte Blanche Corp.*, 496 F.2d 747, 755 (3d Cir.1974), and must present "substantial ground for difference of opinion." Shore's Motion fails at least the second of these requirements.

Shore is seeking to appeal that portion of the June 12, 2002 Opinion and Order in which I held that its continuing performance in the period after May 3, 2001 was irrelevant to whether or not it had provided adequate assurances to Koch. *See Koch,* at 331–32.[5] There are no substantial grounds for differences of opinion with my determination. A party to a contract must decide whether or not to continue in the face of doubt at the time those doubts arise. Just as with the law of qualified or prosecutorial immunity, a rule inviting second-guessing based on after-acquired knowledge would risk deterring socially desirable conduct. *See Butz v. Economou,* 438 U.S. 478, 518, 98 S.Ct. 2894, 57 L.Ed.2d 895 (1978) (Rehnquist, J., dissenting) (citing *Gregoire v. Biddle,* 177 F.2d 579, 581 (2d Cir.1949) (L.Hand, J.)); *Imbler v. Pachtman,* 424 U.S. 409, 424–25, 96 S.Ct. 984, 47 L.Ed.2d 128 (1976); *see also* N.J. Stat. Ann. 12A:2–609 U.C.C. Cmt. 1 (West 1962) ("[A] buyer who believes that the seller's deliveries have become uncertain cannot safely wait for the due date of performance when he has been buying to assure himself of materials for his current manufacturing or to replenish his stock of merchandise."). Thus, the only information that should be relevant to whether or not assurances were adequate is information that antedates or is contemporary with the decision to be made by the party seeking assurance. Nor, notwithstanding its continued, somewhat disingenuous citation to *BAII Banking Corp. v. UPG, Inc.,* 985 F.2d 685, 703 (2d Cir.1993), does Shore point to a single opinion from any court, or offer any rationale, to the contrary.

Accordingly, I must deny Shore's Motion for Certification.

### III. CONCLUSION

For the reasons set forth above, I will deny Shore's Motions for Reconsideration and Certification. I will also deny its Motion to Stay as moot. The Court will enter an appropriate form of Order.

---

appeal hereunder shall not stay proceedings in the district court unless the district judge or the Court of Appeals or a judge thereof shall so order.

5. Shore also seems to contend that I held that "contemporaneous ... performance is not relevant to a finding of adequate assurances." I have searched the June 12 Opinion, in vain, for that holding. Shore may be suggesting, albeit rather archly, that I should have considered the fact that, through May 3, 2001, it was satisfactorily performing its contracts with Koch in determining whether or not Shore repudiated those contracts. That argument would have been better made in Shore's Memorandum in Opposition to Koch's Motion for Partial Summary Judgment. In any event, I cannot see what relevance Shore's past performance has on the reasonableness of Koch's desire for assurances, when the very basis for Koch's doubt was that it would no longer be Shore who was to perform the contracts in the future, or that it would be a Shore that would be radically downsized and different from the Shore that had performed in the past.