**In re Gary Steven HORTON, Terri Fay Mechele Horton, Debtors.**

**Bankruptcy No. 81–00139–N.**

United States Bankruptcy Court,
E. D. Virginia,
Norfolk Division.

Oct. 21, 1981.

John W. Richardson, Norfolk, Va., for debtor.

John P. Van Beek, Washington, D. C., for American Sec. Bank.

John E. Robins, Jr., Norfolk, Va., Asst. U. S. Trustee.

## OPINION AND ORDER

HAL J. BONNEY, Jr., Bankruptcy Judge.

The debtors filed a Chapter 7 petition with this Court on February 4, 1981, and listed a debt with American Security Bank secured by a 1979 Jeep. Notice of the pending bankruptcy and the effective automatic stay pursuant to 11 U.S.C. § 362 were mailed by the Court on February 19th with the Bank duly listed on the schedules and on the mailing matrix. The Bank does not dispute having notice. On May 29, 1981, the trustee, pursuant to 11 U.S.C. § 554, abandoned the Jeep as burdensome property to the estate because the outstanding balance on the loan exceeded the estimated value of the vehicle. On June 17, 1981, the debtors were duly discharged.

The creditor, through its agent, Steven Lyles Associates, forcefully repossessed the Jeep at the debtor's place of employment on July 1, 1981. The debtor testified that the taking induced a lengthy high speed chase (Mr. Horton thought his car had been stolen) that ended in the middle of an intersection with the police intervening.[1] By letter of July 1, 1981, the debtors were notified, after the fact, that the Jeep had been repossessed, and they were given fifteen days to redeem the vehicle by paying the outstanding balance, the repossession fee, and storage costs.

The details of the relationship between the debtors and American Security Bank are important in determining the rights and responsibilities of each under the retail installment contract and the Bankruptcy Code.

The retail installment contract, in its default clause, contains an "ipso facto" or "bankruptcy" provision. The language of the clause reads in pertinent part

"Ten (10) days after Debtor shall have defaulted in the payment of any monthly installment hereunder when due, time being of the essence in this Contract... or if a proceeding in bankruptcy, receivership, or insolvency is instituted by or against any debtor... then Creditor may declare the entire unpaid balance of the Total of Payments hereunder... immediately due and payable *upon demand*... and Creditor shall have all of the remedies of a secured party under the Uniform Commercial Code and any other applicable laws, including the right to take possession of the Collateral upon default without judicial process, to which right Debtor hereby specifically consents. Debtor agrees to assemble the Collateral at a place reasonably convenient to the parties *upon Creditor's request* and agrees that Creditors or its agents may enter Debtor's premises to remove the Collateral or render it unusable." (emphasis added)

The evidence shows that Mr. Horton received no demand for payment or notice prior to the repossession. Upon telephoning the credit department, the debtor had been told to "just keep making the payments." He was current. The debtor was so unclear about the status of his automobile that when it was repossessed he thought it was being stolen. He had received no correspondence and no demand.

This is a gross act on the part of the Bank through its agent. A more brazen unlawful taking the Court has not seen.

Creditors in this jurisdiction seeking recovery of property are generally aware of two cardinal principles: (1) they are not to go out and snatch the stuff without authority and (2) they have ample avenues for relief under the law. At the time of this judge assuming the bench, there existed some of this heavy-handed self-help. A show cause order to a large automotive credit company's national headquarters

---

1. It was a despicable action. Even outside of bankruptcy it begs its worth. The details of this taking were appalling. When an explanation was sought by the debtor, the agent should have done anything but tear through the streets as he did, like a thief.

brought forth concern from its general counsel and the assurance that the company did not encourage or condone such tactics.

Until this matter, abuses—by anyone—have been indeed rare. The creditors know they can obtain relief quickly by the proper approach, lawfully.

Several conclusions are here obvious:

■ [1] The Bank failed to follow the terms of its own retail installment contract. No demand was made. Indeed, payments were current and the customer had been advised to "keep making the payments."

■ [2] Such a clause in the contract, as the one here, to the effect that if the borrower filed bankruptcy the creditor may declare the entire unpaid balance due is invalid. 11 U.S.C. § 365(e). The legislative history says quite clearly and unequivocally, "Subsection (e) invalidates ipso factor [sic] or bankruptcy clauses." Period. House Report No. 95–595, 95th Cong., 1st Sess. (1977) 348–9, U.S.Code Cong. & Admin. News 1978, pp. 5787, 6304.

And the argument that a retail installment contract is not an executory contract is shallow. A very broad definition is accorded the term "executory contract." Indeed, the term is not defined. 2 Collier on Bankruptcy (15th Edition) § 365.02. Williston says that all contracts are, more or less, executory. When they cease to be, they are no longer contracts. Williston on Contracts, Third Edition § 14 (1957).

Further, such a clause would defeat the underlying "fresh start" philosophy of bankruptcy. What justice is there in condoning snatching the vehicle—or any property—when the creditor is chagrined because the borrower filed bankruptcy? To provide otherwise will give rise to the birth of the bankruptcy clause as a tool or weapon against those who file bankruptcy.

■ [3] The Bank argues that when the property here was abandoned, the stay was lifted. This is not so. This Court said that in May in *General Electric Credit Corporation v. Bullock*, 11 B.R. 73 (Bkrtcy., E.D.Va. 1981).

Creditors would read 11 U.S.C. § 362(c)(1) to mean that an abandonment lifts the stay, but it *clearly* does not say that. A debtor's property is protected by the automatic stay which remains in effect until the case is closed, dismissed or the discharge entered, whichever comes first. See an excellent, well-reasoned exposition of the issue in *Berry v. Dial Consumer Discount Company*, 11 B.R. 886 (Bkrtcy., W.D.Pa.1981).

■ Consequently, the Bank did not violate the automatic stay, for the discharge was entered June 17th. The repossession occurred July 1st.

### Result

American Security Bank is not guilty of contempt for violation of the automatic stay. None occurred. The ipso facto bankruptcy clause of the agreement is invalid.

■ The Bank shall return the vehicle to the debtor forthwith. The debtor shall resume making payments in November in the usual amount until the contractual balance is paid. The Bank may not, since the taking was unlawful, add the repossession fee, storage costs or any other charge. Obviously, the Bank retains its lien until the balance is paid.

IT IS SO ORDERED.