**In re John Gilliss PERRY, Jr., Debtor.**

**The RIGGS NATIONAL BANK OF WASHINGTON, D.C., Appellant,**

v.

**John Gilliss PERRY, Jr., Appellee.**

Civ. No. JH–82–3665.
Bankruptcy No. 81–1–1455.
Adv. No. 82–0181.

United States District Court,
D. Maryland.

April 22, 1983.

Joseph E. O'Brien, Jr., Bethesda, Md., and Graham C. Huston, and Roderick H. Angus, Washington, D.C., for appellant.

## MEMORANDUM OPINION

JOSEPH C. HOWARD, District Judge.

The Riggs National Bank of Washington, D.C. ("Bank") appeals from a judgment of the United States Bankruptcy Court for the District of Maryland dismissing the Bank's complaint to modify an automatic stay in effect pursuant to 11 U.S.C. § 362(a). The Bank, a secured creditor, claims that sufficient cause exists under 11 U.S.C. § 362(d) to warrant relief from the stay. Finding no cause to lift the stay, the Bankruptcy Court denied the relief sought. The parties have briefed the issues, and this Court is now prepared to rule on the Bankruptcy Court's resolution thereof.

### I.

The underlying facts are not in dispute. On August 21, 1980, the appellee, John Gilliss Perry, Jr., entered into an installment sales agreement wherein he agreed to pur-

chase a 1980 Audi automobile from Euro Motor Cars Marlow Heights, Inc. and to make sixty (60) consecutive monthly payments of $357.68. The seller thereafter assigned its rights under the contract to the appellant Bank which obtained a secured interest in the car by virtue of the assignment.

Subsequently, on October 30, 1981, appellee filed a petition under Chapter 7 of the Bankruptcy Code, 11 U.S.C. §§ 701 *et seq.* As a result, an automatic stay immediately took effect in accordance with 11 U.S.C. § 362(a). That section provides a blanket of protection for petitioners such as appellee while bankruptcy proceedings are under way. As stated in the House Report accompanying the Bankruptcy Reform Act of 1978:

> The automatic stay is one of the fundamental debtor protections provided by the bankruptcy laws. It gives the debtor a breathing spell from his creditors. It stops all collection efforts, all harassment, and all foreclosure actions. It permits a debtor to attempt a repayment or reorganization plan, or simply to be relieved of the financial pressures that drove him into bankruptcy.

H.R.Rep. No. 95–595, 95th Cong., 1st. Sess. 340 (1977), *reprinted in* 1978 U.S.Code Cong. & Ad.News, 5787, 5963, 6296–97.[1]

The Bank instituted the present action on March 24, 1982, by filing a complaint to modify this stay pursuant to 11 U.S.C. § 362(d)(1) which provides:

> On request of a party in interest and after notice and a hearing, the court shall grant relief from the stay provided under subsection (a) of this section, such as by terminating, annulling, modifying or conditioning such stay ... for cause, including the lack of adequate protection of an interest in property of such party in interest.

As grounds justifying relief from the stay, the Bank alleged that Perry was in arrears in his payments under the terms of the installment sales agreement. In addition to seeking a modification of the stay to enable

it to institute default proceedings against Perry, the Bank attempted to obtain an order compelling Perry to relinquish possession of the automobile, claiming that unless permitted to take immediate possession of the vehicle the Bank's security interest would be impaired by virtue of the depreciable nature of the collateral.

After notice and hearing as required by Section 362(d), the Bankruptcy Court issued an Order denying relief from the stay, finding that at the time of the hearing, Perry was current in his payments under the installment sales agreement. Concluding, however, that the Bank was entitled to adequate protection payments, the Bankruptcy Court ordered (1) that Perry prepay insurance on the vehicle for a period of six months and keep the insurance prepaid at least six months in advance; (2) that Perry make timely payments to the Bank in accordance with the installment sales agreement; and (3) that should Perry not comply with the Court's Order and thereafter fail to cure the default within five days after being so notified by the Bank, the stay would be lifted without further hearing. Adversary No. 82–0181 (filed May 24, 1982).

The Bankruptcy Court subsequently granted the Bank's motion for reconsideration and rehearing of its complaint, and in so doing, vacated its prior Order. After conducting a rehearing *en banc,* the Bankruptcy Court issued a *per curiam* opinion in which it denied the requested relief and dismissed the complaint. Adversary No. 82–0181 (filed November 16, 1982) (consolidated with Adversary No. 82–0182).

## II.

On appeal, the Bank contends that the Bankruptcy Court erred in failing to modify the automatic stay as requested. Appellant persists in its position that sufficient cause exists within the meaning of § 362(d)(1) to justify modifying the stay which presently bars appellant from instituting an action to obtain possession of the vehicle. In support of this claim, Riggs makes the following

1. Section 362 is analyzed in greater detail in the text accompanying notes 3 and 7, *infra.*

arguments: (1) that Perry is, in fact, in default under the terms of the installment sales agreement, despite being current in his payments; (2) that the Bank's security interest in the automobile is not adequately protected because of the potential loss of appellee's personal liability under the agreement should he be discharged in bankruptcy combined with the depreciable nature of the asset; (3) that the Bankruptcy Code provides specific remedies which a debtor must exercise if he or she wishes to retain possession of collateral securing an installment sales contract; and (4) that affirming the Bankruptcy Court's decision would seriously impair the rights of secured creditors in a manner which is inconsistent with the purpose of the Bankruptcy Code.

Before analyzing these contentions, the Court must pause to emphasize the circumscribed nature of this appeal. As discussed herein, the automatic stay provision contained in Section 362 remains in effect from the moment a Chapter 7 petition is filed until a discharge is either granted or denied. Inasmuch as the Bank presently seeks relief from the stay, the Court need only concern itself with the rights of a secured creditor vis-a-vis those of a debtor with respect to the secured collateral during the pendency of the bankruptcy proceedings. Adjudication of the Bank's rights regarding the collateral after discharge would be appropriate only in the event that petitioner is ultimately discharged.

■ Bearing this in mind, the Court shall proceed to consider each of the Bank's arguments *seriatim*. Appellant's first contention is based upon a clause in the installment sales agreement which stipulates that the purchaser shall be in default under the agreement upon commencement of any bankruptcy proceeding by or against the purchaser ("default-upon-filing clause"). Appellant contends in effect that the exist-

ence of any default under the installment sales agreement constitutes sufficient cause to warrant modification of the Section 362 stay, and that by filing a bankruptcy petition appellee defaulted under the terms of the agreement, so that the bank is, *a fortiori*, entitled to the relief sought. The Bankruptcy Court rejected this line of argument, however, finding that such clauses "deprive the debtors of their opportunity to obtain a fresh start and would result in forfeiture contrary to the spirit of the Code," Adversary No. 82–0181, *supra,* at 5, and ruling that the clause at issue was unenforceable as a matter of law. This Court agrees.

■ Although the present Bankruptcy Code bars the use of default-upon-filing clauses in executory contracts,[2] nothing in the Code explicitly prohibits the use of such clauses in contracts that are nonexecutory in nature. It is clear that installment sales contracts are nonexecutory. *Matter of Rose,* 21 B.R. 272, 274–75 (Bkrtcy.N.J.1982); *In re Whatley,* 16 B.R. 394, 397–98 (Bkrtcy. N.D.Ohio 1982). *See also In re Alexander,* 670 F.2d 885, 887 (9th Cir.1982); S.Rep. No. 95–989, 95th Cong., 2d. Sess. 58–60 (1978), *reprinted in* 1978 U.S.Code Cong. & Ad. News 5787, 5844–6; H.R.Rep. No. 95–595, *supra* at 347, *reprinted in* 1978 U.S.Code Cong. & Ad.News at 6303–04; Countryman, *Executory Contracts in Bankruptcy; Part I,* 57 Minn.L.Rev. 439 (1973). *But see In re Horton,* 15 B.R. 403, 405 (Bkrtcy.E.D.Va. 1981). Accordingly, the Court must look to the 1978 Bankruptcy Code's legislative history and the policies underlying the Code in resolving this issue.

One possible theory proffered by a creditor in another case involving precisely the same issue is that default-upon-filing clauses in installment sales agreements are valid *per se* because they do not come within the prohibition of § 365(e). *Matter of Rose,*

**2.** Section 365(e)(1)(B) of the Bankruptcy Code provides that

[n]otwithstanding a provision in an executory contract or unexpired lease, or in applicable law, an executory contract or unexpired lease of the debtor may not be terminated or modified, and any right or obligation under

such contract or lease may not be terminated or modified, at any time after the commencement of the case solely because of a provision in such contract or lease that is conditioned on ... the commencement of a case under this title.

11 U.S.C. § 365(e)(1)(B).

*supra* 21 B.R. at 275. The Bankruptcy Court disagreed with this reasoning, observing that

> [i]t does not *necessarily* follow that just because Section 365(e) of the Bankruptcy Code does not refer to nonexecutory contracts that they are, therefore, valid. In fact, the opposite conclusion might be inferred, for the Bankruptcy Act, prior to 1979, specifically made such bankruptcy default clauses enforceable in leases under Section 70b; Congress did not see fit to continue this enforceability.

*Id.* at 276 (emphasis in original).

This Court declines to draw any inferences regarding Congressional intent insofar as nonexecutory contracts are concerned on the basis of either of these observations, focusing instead upon the policy underlying the automatic stay provision contained in Section 362 of the Bankruptcy Code. That policy is stated quite clearly in the portion of the House Report quoted earlier.[3] The stay is designed to provide a respite for the debtor from his or her financial woes during the pendency of the bankruptcy proceedings. Additionally, it protects the debtor from the dismemberment of his or her estate in the midst of these proceedings. H.R.Rep. No. 95–595, *supra* at 340, *reprinted in* 1978 U.S.Code Cong. & Ad.News at 6297.

The default-upon-filing clause contravenes this clearly defined policy. Any default by appellee would likely constitute sufficient cause under Section 362(d)(1) to warrant the granting of relief from the stay. Thus, were it to enforce the clause, this Court would enable appellant to circumvent the orderly liquidation procedure established by the Code.

Congress enacted Section 362(d) in balancing the needs of the creditor against those of the debtor. That section, as noted, serves as a means for the creditor to obtain relief from the automatic stay for cause, thereby providing the creditor with an adequate safeguard in the event that its interests are seriously jeopardized. The default-upon-filing clause unfairly tips the balance in favor of the creditor at the debtor's expense by creating, in effect, automatic relief from the automatic stay. Because bankruptcy proceedings and the laws under which they are administered are inherently equitable in nature, and because the enforcement of bankruptcy-upon-filing clauses would yield inequitable results, this Court cannot condone the use of such clauses. Accordingly, the Court holds that clauses appearing in installment sales agreements which provide that upon commencement of bankruptcy proceedings the purchaser shall be in default under the contract, violate the policy underlying Section 362 of the Bankruptcy Code, and as such, are unenforceable as a matter of law. *Accord In re Horton, supra* 15 B.R. at 405 (Bkrtcy.E.D.Va.1981) (default-upon-filing clauses invalidated by 11 U.S.C. § 365(e)). *But see In re Schweitzer,* 19 B.R. 860, 867–68 (Bkrtcy.E.D.N.Y.1982) (default-upon-filing clause valid). *But cf. GMAC v. Bell,* 700 F.2d 1053 (6th Cir.1983) (default-upon-filing clause enforceable upon abandonment of secured collateral by trustee).

### III.

Appellant next contends that regardless of the legal status of the default-upon-filing clause, by filing a bankruptcy petition, appellee has impaired the Bank's security interest in the vehicle, and that as a result, the Bank has suffered a loss of adequate protection justifying modification of the stay. The Bankruptcy Court rejected this argument as well, finding that as long as the debtor remains current in his obligations under the installment sales agreement, the Bank is adequately protected within the meaning of Section 362(d). This Court affirms the Bankruptcy Court's ruling on this issue, but only to the extent that it relates to the pendency of the bankruptcy proceedings.

Appellant makes numerous arguments in support of its claim of lack of adequate protection. The Bank contends (1) that the debtor's total indebtedness exceeds the fair

---

**3.** *See* text accompanying note 1 *supra.*

market value of the collateral securing the debtor's obligation; (2) that because the car is a highly depreciable asset, the Bank's interest is subject to numerous risks such as lack of proper care and maintenance, excessive use and other risks not covered by a standard insurance policy; (3) that there is a chance that debtor might allow the insurance policy to lapse; and (4) that the potential loss of the debtor's personal liability in the event of discharge deprives the Bank of the benefit it bargained for in retaining a secured interest in the vehicle. None of the foregoing assertions, however, compels the conclusion appellant would have the Court reach in this regard.

With regard to the first three contentions, these risks are not confined to situations where an individual files a bankruptcy petition. Rather, creditors such as the Bank take such risks each and every time they finance an automobile utilizing an installment sales agreement. Moreover, should the debtor allow his car insurance to lapse, the Bank may then declare a default under the terms of the installment sales agreement and seek repossession of the vehicle.[4]

As to the loss of the debtor's personal liability, that loss is, during the pendency of bankruptcy proceedings, only speculative. Prior to discharge, no loss of personal liability has occurred. Furthermore, it is quite possible that the debtor's petition will be denied by the Bankruptcy Court, in which case no such loss will occur. The Court need not therefore weigh this argument in determining whether the Bank is adequate-

ly protected prior to a disposition of the case. It would be highly inappropriate to grant relief on the basis of mere speculation.

It is thus apparent that during the pendency of bankruptcy proceedings, a debtor is in substantially the same position as any other purchaser who is a party to an installment sales contract. While it is true that the Bank may not foreclose its interest in the vehicle without first obtaining relief from the stay pursuant to Section 362(d), that avenue of relief is clearly available in the event of an actual default. In the meantime, as long as the debtor is fulfilling his obligations under the terms of the installment sales agreement, the Bank has no cause to complain. This Court, therefore, rejects appellant's contention that it is inadequately protected solely because of appellee's bankruptcy petition.

### IV.

An alternative theory proposed by the appellant is that upon filing a Chapter 7 petition the debtor has only two options available should he or she wish to retain possession of collateral securing an installment sales agreement. Appellant argues that the debtor must either seek to reaffirm the agreement pursuant to Section 524[5] or redeem the collateral in accordance with Section 722.[6] The Bank argues that these are the sole remedies available to the debtor under the Code, and that if the debtor is unable or unwilling to invoke either of these remedial provisions upon the creditor's demand, the stay should be modified to

---

4. Paragraph 2 of the installment sales agreement provides in part: "Buyer will at his expense keep and maintain on car insurance against loss or damage by reason of fire, theft, collision and other casualties as Seller may reasonably require..." The contract also provides, in this connection: "PHYSICAL DAMAGE INSURANCE is required in connection with this Credit Sale ..." Exhibit A attached to the Bank's Complaint to Modify Stay.

5. Section 524 permits the debtor and the creditor to enter into a voluntary "reaffirmation" agreement prior to discharge upon obtaining court approval of the agreement. 11 U.S.C. § 524(c).

6. Section 722 provides:
   An individual debtor may, whether or not the debtor has waived the right to redeem under this section, redeem tangible personal property intended primarily for personal, family, or household use, for a lien securing a dischargeable consumer debt, if such property is exempted under section 522 of this title or has been abandoned under section 554 of this title, by paying the holder of such lien the amount of the allowed secured claim of such holder that is secured by such lien.
   11 U.S.C. § 722.

permit the secured creditor to foreclose on its collateral.

Resolving the issue as to whether voluntary reaffirmation and lump-sum redemption are the exclusive remedies available to the debtor who wishes permanently to retain possession of secured collateral is beyond the scope of the instant appeal.[7] Rather, the relevant question here is whether the debtor's failure to exercise either of these options at any time prior to a termination of the bankruptcy proceedings justifies a modification of the stay. The answer to this question turns upon the scope of protection afforded to the debtor by Section 362.

Before proceeding to address the latter question, however, brief discussion with respect to the debtor's interest in secured collateral in his or her possession at various stages of the bankruptcy proceedings is in order. By filing a Chapter 7 petition, all property in which the debtor has a legal or equitable interest becomes part of the debtor's estate. 11 U.S.C. § 541. Thereafter, the property may drop out of the estate upon the occurrence of any one of a number of events. For example, should the debtor claim an exemption or the trustee abandon the property, that property will cease to be part of the estate. 11 U.S.C. §§ 522, 554.

■ In the case of abandonment by the trustee,[8] assuming a creditor retains a security interest in the property at issue, a question arises as to whether the creditor or the debtor assumes a primary possessory interest therein. The United States Bankruptcy Court for the District of Utah undertook a careful analysis of this question in *In re Cruseturner*, 8 B.R. 581, 589–92 (Bkrtcy.Utah 1981), and concluded that

upon abandonment the property ordinarily revests in the debtor. Finding that both the state of the law under the former bankruptcy laws and the legislative history behind the 1978 Code support this proposition, *Cruseturner* held that "when the trustee abandons property, the property stands as if no bankruptcy had been filed and the debtor enjoys the same claim to it and interest in it as he held previous to the filing of bankruptcy." *Id.* at 591. The Court has little to add to the Utah Bankruptcy Court's cogent analysis in *Cruseturner*, and finds that it is fully applicable to the case at bar. Thus, upon filing a bankruptcy petition, property in which the debtor holds a legal or equitable interest initially becomes property of the debtor's estate, and upon abandonment by the trustee the debtor regains his or her former interest therein.[9]

■ Returning to the question as to the scope of protection afforded the debtor by Section 362, it is initially apparent that the automatic stay protects both property of the estate and property of the debtor. Specifically, Section 362(a)(3) stays "any act to obtain possession of property of the estate or of property from the estate," and Section 362(a)(5) stays

any act to create, perfect, or enforce against property of the debtor any lien to the extent that such lien secures a claim that arose before the commencement of the case under this title.

11 U.S.C. §§ 362(a)(3), 362(a)(5). *See In re Cruseturner, supra* at 589–90. Clearly then, the stay applies to property in the debtor's possession at the time of filing, and remains in effect should the trustee thereafter abandon such property.

---

**7.** The Bankruptcy Court's analysis, to the extent it may be construed as adjudging the debtor's post-discharge rights with respect to collateral in his possession, must be regarded as dicta. Because the Bank is seeking a modification of the stay prior to discharge, such determinations are clearly nonjusticiable at present.

**8.** Appellant raises this issue by asserting that the trustee of Perry's bankruptcy estate has filed a No Asset Report Brief for Appellant at 17, n. 5.

**9.** In *GMAC v. Bell, supra* 700 F.2d at 1057, at 9, the Sixth Circuit ruled that the primary possessory interest in the secured collateral vests in the creditor rather than the debtor upon abandonment by the trustee. That case is distinguishable, however, on the ground that the court in *Bell* predicated its decision on the validity of a bankruptcy-upon-filing clause. *Id.*

■ Next, it is important to consider the duration of the stay. Section 362(c) provides:

> ... (1) the stay of an act against property of the estate under subsection (a) of this section continues until such property is no longer property of the estate; and
>
> (2) the stay of any other act under subsection (a) of this section continues until the earliest of—
>
> (A) the time the case is closed;
>
> (B) the time the case is dismissed; and
>
> (C) if the case is a case under chapter 7 of this title concerning an individual or a case under chapter 9, 11, or 13 of this title, the time a discharge is granted or denied.

11 U.S.C. § 362(c). The House Report accompanying Section 362(c) explains this provision in the following terms:

> Subsection (c) of Section 362 specifies the duration of the automatic stay. Paragraph (1) terminates a stay of an act against property of the estate when the property ceases to be property of the estate, such as by sale, abandonment, or exemption. It does not terminate the stay against property of the debtor if the property leaves the estate and goes to the debtor. Paragraph (2) terminates the stay of any other act on the earliest of the time the case is closed, the time the case is dismissed, or the time a discharge is granted or denied (unless the debtor is a corporation or a partnership in a chapter 7 case).

H.R.Rep. No. 95–595, *supra* at 343, 1978 U.S.Code Cong. & Ad.News at 6299. It is therefore apparent (1) that the stay remains in effect as long as the property remains in the debtor's estate; and (2) that upon abandonment by the trustee, the property leaves the estate and goes back to the debtor, in which case it is protected from creditor action, absent circumstances justifying modification of the stay, until a discharge is either granted or denied in accordance with Section 362(c)(2)(C). *In re Cruseturner, supra* at 590.

■ With respect to the relationship between Section 362 and Sections 524 and 722, the Court finds that the debtor's reaffirmation and redemption rights run concurrently with the period of the stay. As the Utah Bankruptcy Court stated in *Cruseturner:*

> [Section 722] specifically gives the debtor the right to redeem abandoned property as well as exempted property ... Likewise, allowable reaffirmations under Section 524(c) can deal with property co-extensive in definition with this Court's interpretation of "property of the debtor."

*In re Cruseturner, supra* at 591. Thus, even if it is true, as appellant urges, that voluntary reaffirmation and lump-sum redemption are the exclusive remedies available to the Chapter 7 debtor who wishes to keep possession of secured collateral, as long as the debtor remains current in his or her obligations under the installment sales agreement securing the collateral, the debtor is entitled to retain possession of the collateral during the pendency of the bankruptcy proceedings, and modification of the stay is unwarranted. This gives the debtor the necessary quantum of time to pursue these statutory remedies prior to a termination of the stay.

### V.

■ Appellants' final claim, that affirming the Bankruptcy Court's decision would seriously impair the rights of secured creditors in a manner which is inconsistent with the purpose of the Code, is clearly unfounded. Indeed, were this Court to adopt appellant's position, the resulting situation, in which a debtor could shortly after filing a petition under Chapter 7 lose all the possessory rights which he or she retains in secured collateral, would undoubtedly create a severe disincentive for prospective petitioners who contemplate seeking protection from creditors under the federal bankruptcy laws. *See Matter of Rose, supra* 15 B.R. at 278. The existence of such a disincentive would run counter to the statutory scheme embodied in the 1978 Bankruptcy Code, which encourages individuals as well as other entities who are facing severe financial difficulties to obtain relief under the Code

and thereafter attempt a fresh start, rather than to allow such individuals to bury themselves under a mountain of debt.

To conclude, in affirming the Bankruptcy Court's dismissal of the Bank's Motion to Modify Stay, this Court does nothing more than hold that no cause has been shown to justify modification of the stay and that any decision regarding the Bank's ultimate rights with respect to the automobile must be postponed until there is a disposition of Perry's Chapter 7 petition. In the meantime, the Bank's interest in the vehicle may be fully protected by seeking modification under Section 362(d) if appellee should default in his obligations under the terms of the installment sales contract.

Accordingly, a separate order shall be issued affirming the Bankruptcy Court's dismissal for the reasons stated herein.