**In re PAYLESS CASHWAYS, INC., Debtor.**

No. 01–42643.

United States Bankruptcy Court, W.D. Missouri.

Dec. 24, 2002.

Kathryn B. Bussing, Esq., Blackwell Sanders Peper Martin, Thomas M. Franklin, Esq., Kansas City, MO, for Silverman Consulting.

Dennis R. Dow, Esq., Mark Moedritzer, Esq., Kansas City, MO, Carey D. Schreiber, Esq., Clifford Chance Rogers & Wells LLP, New York City, for Canadian Imperial Bank.

## MEMORANDUM OPINION

ARTHUR B. FEDERMAN, Chief Judge.

Silverman Consulting, Inc., the Chapter 11 trustee for Payless Cashways, Inc., filed a motion to determine that oversecured creditors, including Oaktree Capital Management, LLC, are not entitled to collect default interest. This is a core proceeding under 28 U.S.C. § 157(b)(2)(B) over which the Court has jurisdiction pursuant to 28 U.S.C. § 1334(b), 157(a), and 157(b)(1). The following constitutes my Findings of Fact and Conclusions of Law in accordance with Rule 52 of the Federal Rules of Civil Procedure as made applicable to this proceeding by Rule 7052 of the Federal Rules of Bankruptcy Procedure. I find that Oaktree Capital Management, LLC, is entitled to collect default interest, but only as to payments not made in a timely manner.

## FACTUAL BACKGROUND

On November 17, 1999, Canadian Imperial Bank of Commerce (CIBC), as the

coordinating and collateral agent for eleven lenders, and debtor Payless Cashways, Inc. (Payless) entered into the Second Amended and Restated Credit Agreement (the Credit Agreement). Oaktree Capital Management, LLC, (Oaktree) was one of the participants in the Credit Agreement. Pursuant to the Credit Agreement, the lenders made certain loans to Payless, and Payless granted the lenders first priority liens on certain of its personal property and fee owned or leasehold real properties. On June 4, 2001, Payless filed this Chapter 11 bankruptcy petition. As of the petition date, Payless was indebted to each of the lenders for their allocable share of the pre-petition indebtedness in the aggregate principal amount of $106,050,000.00. At that time, Oaktree's share of the loan was $35,333,050.03. During the course of the Chapter 11 case, Congress Financial Corporation was granted a junior lien on assets subject to the CIBC lender's lien. With the consent of all parties, on September 10, 2001, the United States Trustee appointed Silverman Consulting, Inc. as the Chapter 11 trustee (the Trustee) for the purpose of conducting an orderly liquidation of Payless' assets. On January 3, 2002, CIBC filed a proof of claim on behalf of all the lenders. It is undisputed that all of the participants in the CIBC loan are holders of claims that are oversecured. As such, there is no dispute that each participant is entitled to post-petition interest on its claim. There is, however, some dispute as to whether an event of default occurred pre-petition. The Credit Agreement required Payless to make a $10,000,000.00 payment to reduce the principal debt on or before December 31, 2000. Payless did not make that payment, but there is no evidence that CIBC assessed interest at the default rate after that date and before the filing of the bankruptcy petition. The Trustee testified that the Credit Agree-ment required Payless to make semi-annual payments to CIBC in the amount of $5,000,000 each. I note, however, that the Trustee began liquidating real estate almost immediately and turning over the proceeds of those sales to the secured creditors. Of the outstanding balance remaining on the CIBC loan to date, I have no record before me of when payments were made to reduce that balance.

The Credit Agreement provides for a default interest rate that is one percent above the non-default interest rate. And the proof of claim indicates that interest on the entire pre-petition indebtedness has accrued post-petition at the default rate. The Trustee filed a motion asking this Court to determine that CIBC is not entitled to the default interest rate and service charges. This Court scheduled a hearing on this matter. Prior to the hearing, the Trustee reached a settlement of this issue with all of the participants in the CIBC loan except for Oaktree. On October 22, 2002, this Court held the hearing. At the hearing Oaktree argued that section 506(b) of the Bankruptcy Code (the Code) is the sole determinant of whether a creditor is entitled to an award of interest, and that the plain language of the Code allows for the unqualified recovery of interest if the contract so provides. The Trustee argued that it would be inequitable to permit Oaktree to recover a default rate of interest in light of the fact that the unsecured creditors in this case may receive no payment. The actual sum of money at issue here, the difference between interest that accrues at the default rate on the outstanding balance and interest that accrues at the non-default rate, is $290,000. There is no pending objection to the claim of Oaktree.

## DISCUSSION

### A. Acceleration

■ Section 506(b) of the Code authorizes an oversecured creditor to earn post-

petition interest on its claim.[1] Oaktree claims that it is entitled to that interest at the default rate because the Credit Agreement so provides. The Credit Agreement does provide that the default interest rate is triggered automatically if any one payment is not made, but further provides that default interest is to be charged only on the defaulted amount:

(a) If a Borrower shall default in the payment of the principal of or interest on any Term Loan or in the payment of any other amount becoming due hereunder, whether at stated maturity, by acceleration or otherwise or, if any such amount shall be outstanding at the time of the occurrence of any Event of Default specified in Section 7.1(e) or (f), the Borrower shall pay interest, to the extent permitted by law, *on such defaulted amount* up to (but not including) the date of actual payment . . .; *provided,* that if the Borrower shall have failed to reduce the principal amount of the Term Loans in an aggregate amount of not less than $10,000,000 by December 31, 2000 with the Net Cash Proceeds from the sale, refinancing or sale-lease-back of any Property of the type described in item (i)(B) of the definition of CIBC Collateral (and which is permitted under this Agreement), then, from and after January 1, 2001, the Borrower shall pay interest, to the extent permitted by law, *on such defaulted amount* up to (but not including) the date of actual payment.[2] (emphasis supplied)

The Trustee testified at the hearing that Payless failed to make the $10,000,000 payment on December 31, 2000. The Trustee also testified that Payless was current as to all other payments due on June 4, 2001, the petition date. Oaktree claims that the missed payment is an event of default, and that that event, coupled with the bankruptcy filing, entitles it to the default rate of interest on the unpaid principal balance. I disagree. Payless failed to make one payment of $10,000,000, and, by the terms of the Credit Agreement, CIBC was entitled to interest at the default rate as to that payment. In order to claim the default rate of interest on the entire debt, however, CIBC would have had to accelerate the debt. And it is well-settled that acceleration of a debt requires some affirmative action.[3] The court in *Beal Bank v.Crystal Properties, Ltd., L.P.* found that under both California law and the law of the Ninth Circuit, even if the terms of a note do not require notice or demand as a prerequisite to accelerating a note, the holder must take affirmative action to notify the debtor if it intends to accelerate.[4] This is certainly true in the Eighth Circuit.[5] As the Court stated in *Tarkio College,* " 'acceleration of the maturity of an installment note is a harsh remedy,' " therefore, a court requires particularity in effectuating acceleration.[6] Not only is acceleration a harsh remedy in that the entire debt becomes due and payable at once, but, as is demonstrated here, most commercial in-

---

1. 11 U.S.C. § 506(b); *United States v. Ron Pair Enterprises, Inc.,* 489 U.S. 235, 241, 109 S.Ct. 1026, 1030, 103 L.Ed.2d 290 (1989).

2. Oaktree's Ex. # A, § 2.4 at pg. 25 (Second Amended and Restated Credit Agreement) (emphasis added).

3. *See Beal Bank v. Crystal Properties, Ltd., L.P. (In re Crystal Properties, Ltd. L.P.),* 268 F.3d 743, 750 (9th Cir.2001).

4. *Id.* at 749.

5. *First Bank Investors' Trust v. Tarkio College,* 129 F.3d 471, 475 (8th Cir.1997).

6. *Id.* (citations omitted).

struments impose a higher interest rate after default and acceleration. In *Curry v. United States Small Business Administration*,[7] the court concluded that the general rule is that "where acceleration of the installment payments in cases of default is optional..., then the entire debt does not become due on the mere default of payment, but affirmative action by the creditor must be taken to make it known to the debtor that he has exercised his option to accelerate."[8]

■ I am aware that the Credit Agreement is to be construed in accordance with, and governed by, New York law.[9] And I find that New York, likewise, requires some affirmative action prior to acceleration.[10] In *Ward v. Walkley* the New York Supreme Court stated that "where the acceleration of the maturity of a mortgage debt on default is made optional with the mortgagee, some affirmative action must be taken ... evidencing [the] election to take advantage of the accelerating provisions, and that until such action has been taken the provision has no operation." In *Chase Mortgage Company v. Fowler*,[11] the court found that a creditor had not validly exercised its right to accelerate the debt because the notice of default did not "clearly and unequivocally" advise the borrower of all sums that were immediately due and payable.[12] Oaktree does not claim that CIBC attempted to accelerate the entire debt prior to the bankruptcy filing. And it did not offer any evidence of that fact. At the hearing, counsel for Oaktree argued that the default in payment on December 31, 2000, combined with the bankruptcy filing triggered the default rate of interest on the unpaid principal balance. The Credit Agreement provides that the filing of a bankruptcy petition is an event of default.[13] The Agreement specifies 15 events of default, and provides that, with two exceptions, upon an event of default, CIBC must send notice to Payless that it is declaring the debt due and payable:

> then, and in every such event [of default] and at any time thereafter during the continuance of such event, the Agent [CIBC] may, and at the request of the Majority Lenders (as the case may be) shall, by notice to the Borrower, take one or more of the following actions, at the same or different times: (1) declare the Loans then outstanding to be forthwith due and payable, whereupon the principal of the Loans, together with accrued interest thereon and all other liabilities of the Borrower accrued hereunder and under any other Loan Document, shall become forthwith due and payable.[14]

The exceptions include the filing of a bankruptcy petition:

> *provided*, that without any notice to the Borrower or any other act by the Agent or the Lenders, in the case of the occurrence of (x) any of the Events of Default specified in clauses (e) [the filing of a voluntary petition] or (f) [the filing of an involuntary petition] above with respect to the Borrower, all amounts due hereunder (together with accrued interest thereon) and all other Secured Obligations and liabilities of the Borrower

7. 679 F.Supp. 966 (N.D.Cal.1987).

8. *Id.* at 969–70.

9. Oaktree's Ex. # A, § 9.7 at pg. 72.

10. *See Ward v. Walkley*, 143 A.D.2d 415, 416, 532 N.Y.S.2d 426, 427 (N.Y.App.Div.1988)

11. 280 A.D.2d 892, 721 N.Y.S.2d 184 (N.Y.App.Div.2001)

12. *Id.*

13. Oaktree's Ex. A, § 7.1(e) and (f).

14. Oaktree Ex. # A, § 7.1 at pg. 63.

hereunder and under the other Loan Documents shall become immediately due and payable.[15]

Thus, the issue before me is whether an "ipso facto" clause, along with language in a loan document that provides for automatic acceleration, can circumvent the general principle that a creditor must take some affirmative action to accelerate a loan. I find that it cannot. The Ninth Circuit addressed this at length in *Beal Bank v. Crystal Properties, Ltd., L.P.* It found that despite the language in the contract, a creditor must take affirmative action to put a debtor on notice that it intends to exercise its option to accelerate.[16] The court in *United States v. Cardinal,* likewise, found that a creditor must make it known to the debtor that it has exercised its option to accelerate, despite language in the note that purports to waive any notice of demand.[17] In *In re Holiday Mart, Inc.,*[18] the court held that the holder of a note must take some affirmative action that evidences its intention to accelerate even if the note provides for acceleration without notice.[19] This result is not only consistent with the general rule that creditors must take some affirmative action to accelerate a debt, but it comports with the decisions of other courts that refuse to enforce *ipso facto* clauses. An *ipso facto* clause is a clause in a document that purports to terminate or modify a debtor's rights if the debtor files for bankruptcy protection.[20] In *In re Auto International Refrigeration,* the court opined that such clauses are generally rendered unenforceable when the sole argument concerning whether a loan is accelerated is that the terms of the loan agreement affirmatively accelerated the loan upon the filing of a bankruptcy petition.[21] The court went on to discuss the difference between acceleration of debt for the purpose of filing a proof of claim in a bankruptcy case, and acceleration of debt for the purpose of enforcement.[22] It began with section 101(a)(4) of the Code, which defines a claim as "a right to payment, whether or not such right is reduced to judgment, liquidated, unliquidated, fixed, contingent, matured, unmatured, disputed, undisputed, legal, equitable, secured, or unsecured." [23] In addition, section 502(a) and (b)(1) provides that a creditor can file a claim in a bankruptcy estate even if its claim is unmatured and unliquidated:

(a) A claim or interest, proof of which is filed under section 501 of this title, is deemed allowed, unless a party in interest... objects.

(b) Except as provided..., if such objection to a claim is made, the court, after notice and a hearing, shall determine the amount of such claim as of the date of the filing of the petition, and shall allow such claim in lawful currency of the United States in such amount, except to the extent that—

---

15. *Id.*

16. 268 F.3d 743, 749 (9th Cir.2001) (citing *What is Essential to Exercise of Option to Accelerate Maturity of Bill or Note,* 5 A.L.R.2d 968, 971, 1949 WL 6858 (1949) [for the premise that the addition of words such as "without demand or notice" does not alter the requirement of an affirmative act of the holder of the note for the valid exercise of the option] ).

17. 452 F.Supp. 542, 547 (D.Vt.1978).

18. 9 B.R. 99 (Bankr.D.Hawai'i.1981).

19. *Id.* at 105.

20. *Mims v. Fidelity Funding, Inc. (In re Auto International Refrigeration),* 275 B.R. 789, 810 (Bankr.N.D.Tex.2002).

21. *Id.* at 811.

22. *Id.* at 812.

23. 11 U.S.C. § 101(a)(4).

(1) such claim is unenforceable against the debtor and property of the debtor, under any agreement or applicable law for a reason other than because such claim is contingent or unmatured.[24]

And, the legislative history to section 502(b) of the Code states that bankruptcy acts as an acceleration of the principal amount of all claims against the debtor. In other words, a creditor is allowed to file a proof of claim for the full amount of an unmatured debt owed by the debtor, however, the automatic stay prevents the creditor from taking any overt steps to accelerate the debt.[25] In *In re Texaco*, the court found that the mere filing of a case was not sufficient cause alone to lift the automatic stay.[26] In that case, movants sought relief from the stay in order to give notice of their right to accelerate, arguing that notice is nothing more than a ministerial act intended to preserve the status quo.[27] In fact, the notes at issue in *Texaco* provided for a reduction in the interest rate post-petition. By serving a notice of acceleration, conditioned solely on the bankruptcy filing, these noteholders sought to lock in the higher rate of interest.[28] The court refused to lift the stay, holding that to do otherwise would advance the interests of some claimants over others.[29] Likewise, in *Riggs National Bank of Washington, D.C. v. Perry (In re Perry)* the bankruptcy court refused to grant stay relief to a secured creditor who sought relief only on the basis of an *ipso facto* clause.[30] The court held that these "de-fault-upon-filing" clauses contravene the policy of providing respite from economic woes during the pendency of bankruptcy proceedings that is explicitly embodied in the automatic stay.[31] For the reasons stated above, I find the filing of the bankruptcy petition in this case did not *per se* accelerate the loans. Oaktree took no affirmative action to accelerate as it was required to do both by federal bankruptcy law, and the law of New York. As such, Oaktree is not entitled to the default rate of interest on its portion of the outstanding principal balance. I do, however, find that the Credit Agreement provides that Oaktree could impose the default rate of interest on any missed payment up to and until such time as it took some affirmative action to accelerate the entire loan. Thus, I find that, if permitted by section 506(b) of the Code, Oaktree is entitled to the default rate of interest on its approximately 33 percent of the missed payment of $10,000,000 from December 31, 2000, until payment is made. In addition, I find that Oaktree is entitled to assess interest at the default rate on its portion of any and all payments Payless failed to make post-petition, to the extent permitted by the loan documents.

## B. *506(b)*

Section 506(b) provides:

(b) To the extent that an allowed secured claim is secured by property the value of which, after any recovery under subsection (c) of this section, is greater than the amount of such claim, there shall be allowed to the holder of such

---

**24.** 11 U.S.C. § 502(a) and (b)

**25.** *Auto Interna'l Refrigeration,* 275 B.R. at 812 (citing *In re Metro Square,* 1988 WL 86679 (Bankr.D.Minn.1988); *In re PCH Associates,* 122 B.R. 181, 198 (Bankr.S.D.N.Y. 1990); *In re Texaco,* 73 B.R. 960, 967 (Bankr. S.D.N.Y.1987)).

**26.** 73 B.R. at 967.

**27.** *Id.*

**28.** *Id.* at 968.

**29.** *Id.*

**30.** 29 B.R. 787 (D.Md.1983).

**31.** *Id.* at 791.

claim, interest on such claim, and any reasonable fees, costs, or charges provided for under the agreement under which such claim arose.[32]

Oaktree argues that the plain language of section 506(b) contains no authorization for the examination of the "reasonableness" of the rate of interest charged by an oversecured creditor. I agree. The United States Supreme Court made this quite clear when it stated in *United States v. Ron Pair Enterprises, Inc.* that the recovery of postpetition interest is unqualified by section 506(b), while the recovery of fees, costs and charges are allowed only if they are reasonable, and if they are provided for in the agreement.[33] As a result of this principle, cases hold that section 506(b) contemplates the award of interest to an oversecured creditor at the contract rate, barring equitable considerations or restrictions under state law.[34]

■ The Trustee argues that granting Oaktree default interest would violate "the equitable considerations of section 506(b) and the principle of ratable distribution for the bankrupt's creditors."[35] The Trustee relies on *Vanston Bondholders Protective Committee v. Green* [36] for the proposition that a senior lender should be restricted from collecting default interest at the expense of other creditors. Certainly every dollar paid to Oaktree in default interest is one less dollar available to Congress Financial on its junior lien, to administrative expense claimants, and/or to unsecured creditors. But section 506(b), enacted subsequent to the *Vanston* decision, does not refer to "reasonable" interest rates or "equitable" considerations. While some courts have grafted those considerations onto section 506(b),[37] I need not decide whether such an interpretation is permitted because, in this case, I find a lack of an equitable basis to deny the increased rate on the defaulted amount. The default rate is one percent higher than the non-default rate. And, as interpreted here, that rate will be paid only on the defaulted payments, not the entire principle balance. I find that the rate as applied here is a reasonable one, that those who advanced credit to debtor after December 31, 2000, did so subject to the CIBC lenders' right to charge that rate, that the amount sought is not significant compared to the debtor's scheduled debt, and that equity should not, under the facts of this case, create a modification of the lenders' contract with the debtor.

There remains the task of actually computing the amount due Oaktree pursuant

---

**32.** 11 U.S.C. § 506(b).

**33.** *United States v. Ron Pair Enterprises, Inc.,* 489 U.S. 235, 241, 109 S.Ct. 1026, 1030, 103 L.Ed.2d 290 (1989).

**34.** See, e.g., *Bank of Honolulu v. Anderson (In re Anderson),* 69 B.R. 105, 108 (9th Cir. BAP 1986) (holding that when an oversecured creditor seeks interest on its claim, courts apply the interest rate provided for in the contract); *Connecticut General Life Ins. Co. v. Schaumburg Hotel Owner Limited Partnership (In re Schaumburg Hotel Owner Limited Partnership),* 97 B.R. 943, 951 (Bankr.N.D.Ill. 1989) (holding that a court should allow the contractually-bargained for default rate under section 506(b) without examining the reasonableness of these rates provided they fall with-

in the range of acceptable rates); *In re Skyler Ridge,* 80 B.R. 500, 509–511 (Bankr.C.D.Cal. 1987) (stating that if there is a contract that provides for a mutually-negotiated interest rate, that rate must be applied by the court, including provisions for a default rate of interest, unless the interest rate is unconscionable, or violates state usury laws).

**35.** Doc.2023, at 1.

**36.** 329 U.S. 156, 165, 67 S.Ct. 237, 241, 91 L.Ed. 162 (1946)

**37.** *See e.g., In re Vanderveer Estates Holdings,* 283 B.R. 122, 134 (Bankr.E.D.N.Y.2002) (Citing *In re Vest Associates,* 217 B.R. 696, 702 (Bankr.S.D.N.Y.1998)).

to this Memorandum Opinion. Evidence sufficient to make that compilation was not offered. On or before January 17, 2003, the parties should either submit a stipulated order as to the amount of default interest owed Oaktree pursuant to this Memorandum Opinion, or the Trustee should file an appropriate claim objection. The Order setting the amount of Oaktree's claim shall constitute the final order implementing the findings in this Memorandum Opinion.

In summary, I find that Payless is in default as to one $10,000,000 payment due on December 31, 2000. Further, Payless may be in default as to any semi-annual payments not made post-petition until such time as sales proceeds were applied to reduce the obligation. Oaktree is entitled to assess interest at the default rate as to the portion of the defaulted payments that would have been applied to its debt.