

2003 Decisions

Opinions of the United
States Court of Appeals
for the Third Circuit

3-25-2003

# In Re Optel Inc

Precedential or Non-Precedential: Non-Precedential

Docket 02-2121

Follow this and additional works at: http://digitalcommons.law.villanova.edu/thirdcircuit_2003

Recommended Citation

"In Re Optel Inc " (2003). *2003 Decisions.* Paper 719.
http://digitalcommons.law.villanova.edu/thirdcircuit_2003/719

This decision is brought to you for free and open access by the Opinions of the United States Court of Appeals for the Third Circuit at Villanova University School of Law Digital Repository. It has been accepted for inclusion in 2003 Decisions by an authorized administrator of Villanova University School of Law Digital Repository. For more information, please contact Benjamin.Carlson@law.villanova.edu.

<u>NOT PRECEDENTIAL</u>

UNITED STATES COURT OF APPEALS
FOR THE THIRD CIRCUIT

_____

No. 02-2121

_____

IN RE: OPTEL, INC., ET AL.


NATIONWIDE MUTUAL INSURANCE COMPANY
Appellant

v.


OPTEL, INC., ET AL.
Appellees

_____

On Appeal from the United States District Court
for the District of Delaware
(99-CV-3951)
District Judge:  The Honorable Sue L. Robinson

_____


Argued: January 14, 2003


Before:  ROTH, FUENTES and ALDISERT, <u>Circuit Judges</u>
(Opinion Filed: March 25, 2003)

_____


C. Paul Scheuritzel (Argued)
Marvin, Larsson, Henkin & Scheuritzel
Centre Square West, Suite 3510
Philadelphia, PA 191902

        Attorney for Appellant

James A. Beldner
Richard S. Kanowitz (Argued)
Kronish Lieb Weiner & Hellman LLP
1114 Avenue of the Americas
New York, NY 10036-7798

Brendan Linehan Shannon
Young Conaway Stargatt & Taylor, LLP
The Brandywine Building
1000 West Street, 17th Floor
Wilmington, Delaware 19899

        Attorneys for Appellees

---

## OPINION OF THE COURT

---

FUENTES, Circuit Judge:

Appellant Nationwide Mutual Insurance Company appeals the District Court's order granting Debtors' objection to its proof of claim. Nationwide contends that the Agreement of Sale underlying its proof of claim includes a deferred payment that may be paid at once in a lump sum of $6 million or deferred and paid over time in which case it becomes $10 million. Nationwide argues that inasmuch as it has not received a lump sum cash payment, it is entitled to the larger sum. Because we agree with the District Court that appellant's claim should be valued at $6 million, we affirm.

### I.  Facts and Procedural Background

The factual allegations underlying this case are well known to the parties, and therefore,

they are not detailed here, except to the extent that they directly bear upon the analysis. By Agreement of Sale dated July 6, 1994, Nationwide Communications, Inc., the predecessor to appellant Nationwide Mutual Insurance Company, sold certain satellite and cable television assets to Vanguard Communications, L.P. and TVMAX Communications (Texas), Inc. At or about the time of closing, Vanguard assigned all of its rights and delegated its obligations to OpTel, Inc., the parent of TVMAX. The Agreement of Sale provides for a purchase price in the amount of $15 million to be paid to Nationwide on the closing date and for a deferred payment, which is a function of operating revenues generated by the assets, to be paid later (the "Deferred Payment"). The Deferred Payment was to be no less than $6 million and no more than $10 million, depending on the Debtors' financial performance. Agreement of Sale § 2(a)(ii), App. at 480. The parties agree that, based on the Debtors' financial performance, the Deferred Payment came to $6 million. The Agreement of Sale further provides:

> The Deferred Payment shall be the joint and several obligation of both [TVMAX] and [OpTel] and shall become due and payable at [Nationwide's] request, which request may be made only following either (i) the conclusion of [TVMAX's] fifth or sixth full fiscal year following the Closing Date [January 11, 1995] (each a "Scheduled Triggering Date") or (ii) the date of sale or other disposition of a majority of the Assets or a majority of the outstanding voting capital stock of [TVMAX] to a third party who is not an affiliate of [TVMAX] (an "Asset Disposition").

Agreement of Sale § 2(b)(i), App. at 481. The Agreement of Sale also provides that

> Nationwide may exercise its right to receive the Deferred Payment by delivering written notice to [TVMAX] and [OpTel] within ninety (90) calendar days after (x) [TXMAX's] issuance of its financial statements for the fiscal year ending on the applicable Scheduled Triggering Date (and [TVMAX] hereby

-3-

agrees to issue such statements not later than one hundred twenty (120) calendar days after the end of each fiscal year) or (y) the Asset Disposition date (in either event, the "Notice Period"). [TVMAX] or [OpTel] shall make the Deferred Payment within forty-five (45) calendar days of receiving the foregoing notice from [Nationwide].

Agreement of Sale § 2(b)(i), App. at 481-82.

On October 28, 1999, before the Deferred Payment was due, OpTel, Inc. and its subsidiaries and affiliates, including TXMAX Communications (Texas), Inc. [collectively the "Debtors"], filed voluntary petitions for reorganization pursuant to Chapter 11 of the Bankruptcy Code. On July 13, 2000, Nationwide filed two identical proofs of claim for $6 million - $10 million, based on the Agreement of Sale, one against TVMAX and one against OpTel, its parent. On May 3, 2001, Nationwide filed a motion for relief from stay. In its motion, Nationwide asserted that TVMAX had failed to provide the required financial statements to Nationwide for fiscal year 1999 and fiscal year 2000 and that neither TVMAX nor OpTel had paid the Deferred Payment. Nationwide directed the District Court's attention to the provision of the Agreement of Sale which provides its remedy in the event that the Deferred Payment was not made when due. The Agreement of Sale provides, in pertinent part:

If [TVMAX] or [Optel] fails to make the Deferred Payment when it is payable pursuant to Sections 2(b)(i) and (ii) [which provide, respectively, when and how much payment is due] above, then [Nationwide] shall have the right, in lieu of any other remedy that would otherwise exist as a result of such failure, to demand that [TVMAX] execute and deliver to [Nationwide] a promissory note in the form of Exhibit "E" hereto (the "Note") in an amount equal to the greater of (X) $10 million or (Y) the sum of the Deferred Payment calculated in accordance with Section 2(b)(ii) above plus $3 million. The Note shall be guaranteed by [OpTel]

pursuant to a guaranty in the form of Exhibit "F" hereto (the "Guaranty").

Agreement of Sale § 2(b)(iii), App. at 484-85. In its motion, Nationwide asked the Court to modify the automatic stay and treat its motion for relief from stay as a request that the Debtors make the Deferred Payment. The Debtors opposed the motion. Ultimately, Nationwide and the Debtors agreed to defer the Motion.

On December 4, 2001, the Court confirmed the Debtors' plan of reorganization. Among other things, the plan substantively consolidated the Debtors' estates. The Court reserved certain issues, including the treatment of Nationwide's claim, for a hearing conducted on March 28, 2002. Prior to the hearing, the Debtors filed an objection to Nationwide's claims. In their objection, Debtors asked the court to expunge Claim number 1783, which Nationwide had filed against OpTel, on the basis that it was duplicative of Claim number 1797, which Nationwide had filed against TVMAX, in light of the substantive consolidation of the estates of OpTel and TVMAX. Additionally, the Debtors asserted that Nationwide's claim arose pre-petition and that its value must be based on the amount of the claim as of the petition date. The Debtors argued:

> Notwithstanding Nationwide's contentions, Nationwide's Claim number 1797 arose pre-petition, and its value must be based on the amount of the claim as of the Petition Date. Pursuant to 11 U.S.C. § 362, the filing of a voluntary bankruptcy petition "operates as a stay, applicable to all entities, of . . . [an] action or proceeding . . . to recover a claim against the debtor that arose before the commencement of the case". Thus, Debtors' filing of a voluntary petition froze the claim at its amount as of the petition date, i.e. $6,000,000, based on the fact that the requisite amount of time had not passed since the closing date of January

-5-

11, 1995. That events triggering the $10,000,000 provision might have occurred absent the stay is irrelevant, as the claim amount is frozen at the amount as of the Debtors' filing of the petition.

Debtors' Objection to Claims of Nationwide, App. at 562. In response, Nationwide acknowledged that it was only entitled to one recovery. Nationwide asserted that it was, however, entitled to a claim in the amount of $10 million because the Agreement of Sale provided that, in the event that the Debtors did not choose to make a lump sum payment, they were obligated to pay Nationwide $10 million over time in accordance with the terms of the note.

Nationwide further asserted that the Agreement of Sale provided that Texas law governs the interpretation of their contract and that, under Texas law, the provision requiring a larger payment if the Debtors failed to make a lump sum payment was enforceable, and should be enforced by the Court. Finally, Nationwide asserted that the Debtors' reliance on the automatic stay provisions of 11 U.S.C. § 362 was misplaced because events giving rise to an enforceable obligation could occur while the automatic stay is in effect and "the automatic stay is no impediment to a mere calculation of Nationwide's claim in this matter." Response of Nationwide to Debtors' Objection to Claims, App. at 752.

The District Court concluded, after hearing arguments of counsel, that Nationwide was entitled to a claim in the amount of $6 million. The court reasoned that, as of the petition date, there was an obligation to pay $6 million and the fact that a bankruptcy intervened, which made the Debtors unable to make a lump sum payment timely, should not affect the amount of the

claim.  As a result, Nationwide's received, pursuant to the Debtors' plan of reorganization, a distribution equal to one share of stock in the reorganized entity for each $100 of its $6 million claim.  Nationwide timely filed a Notice of Appeal.

## II.  Jurisdiction and Standard of Review

The District Court exercised jurisdiction over this matter under 28 U.S.C. § 1334.  We have appellate jurisdiction under 28 U.S.C. § 1291.

We accept the District Court's finding of historical facts unless they are clearly erroneous, but we exercise "plenary review of the trial court's choice and interpretation of legal precepts and its application of those precepts to the historical facts."  Mellon Bank, N.A. v. Metro Communications, Inc., 945 F.2d 635, 642 (quoting Universal Minerals, Inc. v. C.A. Hughes & Co., 669 F.2d 98, 101-02 (3d Cir. 1981)).  In this case, the facts are not in dispute. Therefore, we exercise plenary review of how to construe the Agreement of Sale which underlies appellant's claim, in light of the Debtors' bankruptcy.

## III.  Discussion

Nationwide asserts that the District Court erred by allowing its claim in the amount  of $6 million rather than $10 million.  Nationwide argues that, because the Debtors chose to give it stock in the reorganized entity on account of its claim under the plan of reorganization rather than making a $6 million lump sum cash payment, it is entitled to a claim in the amount of $10 million.  Nationwide argues that this is so because, upon the failure of the Debtors to make a lump sum payment, the unambiguous terms of the Agreement of Sale became self-operative, requiring the issuance of a $10 million note.

The Debtors assert in response that Nationwide's claim was fixed at the amount of $6 million upon the filing of their bankruptcy petitions because the automatic stay then went into effect. Once the automatic stay was operative, its effect was to prohibit Nationwide from seeking to collect on its claim. The Debtors pointed out at oral argument that Nationwide did not obtain relief from the automatic stay and was therefore unable to make a request for the Deferred Payment, which is the contractual trigger for the Debtors' obligation to make the Deferred Payment. In essence, the Debtors argue that the commencement of bankruptcy proceedings resulted in Nationwide being unable to seek to collect its claim and the Debtors being unable to choose to make a $6 million lump sum payment. Therefore, the Debtors argue, the District Court correctly allowed Nationwide's claim in the amount of $6 million. We agree with the Debtors.

According to the Agreement of Sale, the Deferred Payment was not due until either the conclusion of TVMAX's fifth or sixth full fiscal year following the closing date (January 11, 1995), or upon the disposition of a majority of the transferred assets or a majority of the outstanding voting capital stock of TVMAX to a third party who was not its affiliate. The parties agree that none of these events occurred prior to the Debtors' October 28, 1999 bankruptcy filing. It is also undisputed that Nationwide did not provide notice, as required pursuant to section § 2(b)(i) of the Agreement of Sale, that it was exercising its right to receive the Deferred Payment.

Although, pursuant to the provisions of the Agreement of Sale, the Deferred Payment was not due at the time that the Debtors sought Chapter 11 relief, the debt owed to Nationwide

by the Debtors was accelerated by operation of law by the filing of the Debtors' bankruptcy petitions. See In re Auto International Refrigeration, 275 B.R. 789, 813 (Bankr. N.D. Tex. 2002); In re Payless Cashways, Inc., 287 B.R. 482, 488 (Bankr. W.D. Mo. 2002); In re Manville Forest Products Corp., 43 B.R. 293, 297 (Bankr. S.D.N.Y. 1984). As the Bankruptcy Court explained in Manville,

> It is a basic tenet of the Bankruptcy Code that "[b]ankruptcy operates as the acceleration of the principal amount of all claims against the debtor." In re Tonyan Construction Company, Inc., 28 B.R. 714, 727 (Bankr. N.D. Ill. 1983); In re Princess Baking Corporation, 5 B.R. 587, 590 (Bankr. S.D. Ca. 1980). See also In re Johns-Manville Corp., 36 B.R. 727, 740 (Bankr. S.D.N.Y. 1984), Guarantee Trust Co. of New York v. Henwood, 86 F.2d 347, 351 (8th Cir. 1936). This tenet follows logically from the expansive Code definition of "claim", which allows any claim to be asserted against the debtor, regardless of whether such claim is "reduced to judgment, liquidated, unliquidated, fixed, contingent, matured, unmatured, disputed [or] undisputed . . . ." 11 U.S.C. § 101(4)(A), and from the Code's provision in Section 502 that a claim will be allowed in bankruptcy regardless of its contingent or unmatured status. Such contingent or unmatured claims may be asserted against the debtor despite the provisions of section 362(a)(6), which stays "any act to collect, assess, or recover a claim against the debtor that arose before the filing of the Chapter 11 petition." 11 U.S.C. § 362(a)(6).
>
> Construing these code provisions together allows a creditor to file a claim for the full amount of an unmatured debt owed by the debtor despite the fact that the creditor is prevented, under Section 362 of the Code, from taking any steps to enforce that claim.

Id. at 297-98. Accordingly, Nationwide was acting within its rights when it filed a claim for $6 million - $10 million. While Nationwide was able to assert a claim for the Deferred Payment although its right to payment had not matured by the petition date, due to the

operation of the automatic stay it was not able to take any steps to increase its recovery under the Agreement of Sale. See In re PCH Associates, 122 B.R. 181, 198 (Bankr. S.D.N.Y. 1990) (citing In re Texaco, 73 B.R. 960, 966 and Manville, 43 B.R. at 297-98) (there is a distinction between "acceleration of a debt upon the filing of the bankruptcy petition for the purpose of the filing of a proof of claim . . . and acceleration for the purpose of taking actions against a debtor in violation of the automatic stay."); see also In re Metro Square, No. 4-88-2117, 1988 WL 86679, at *2 (Bankr. D. Minn. Aug. 10, 1988) ("A creditor is allowed to file a claim for the full amount of an unmatured debt owed by the debtor however, under 11 U.S.C. § 362, the creditor is prevented from taking overt steps to accelerate the debt, including sending notices of default.").

The Debtors correctly assert that, by virtue of the automatic stay, Nationwide's claim was "frozen" in the amount of $6 million. Because Nationwide did not obtain relief from the automatic stay, it was unable to give notice, as required pursuant to section § 2(b)(i) of the Agreement of Sale, that it was exercising its right to receive the Deferred Payment. We therefore affirm the District Court's determination that Nationwide is to receive a distribution on account of its claim in the amount of $6 million.

## IV. Conclusion

After carefully considering the arguments discussed above and all other arguments advanced by the appellant in support of its assertion that the District Court erred by not allowing it a claim in the amount of $10 million, we affirm the District Court's decision.

_____

TO THE CLERK OF THE COURT:

Kindly file the foregoing Opinion.

By the Court,

 /s/ Julio M. Fuentes

Circuit Judge